SHARON D. CHESTNUT, Plaintiff-Appellant, v. M. ADELI, M.D., *et al.*, Defendants-Appellees.

Fourth District No. 4—84—0364

Opinion filed February 26, 1985.

Claudia Smith Anderson and Thomas B. Meyer, both of Acton, Meyer, Smith, Miller & Anderson, of Danville, for appellant.

Sebat, Swanson, Banks, Lessen & Garman, of Danville (Ralph J. Swanson, of counsel), for appellee Lakeview Medical Center.

Richard F. Record, Jr., Richard C. Hayden and Paul R. Lynch, all of Craig & Craig, of Mattoon, for appellee M. Adeli.

JUSTICE MILLS delivered the opinion of the court:

Medical malpractice limitations question.

May a plaintiff file suit alleging medical malpractice on the basis of actions occurring toward the end of a continuous course of treat-

ment, then subsequently file a timely amended complaint based on completely different conduct commencing early on in that course of treatment—nearly 10 years after the initial conduct occurred?

We think not.

We affirm.

Chestnut filed her initial complaint alleging medical malpractice on March 26, 1981. The gravamen of the allegations contained therein was defendants' alleged tortious conduct in inserting a Kuntscher rod of improper length into Chestnut's left femur on December 19, 1977. (This operation was part of a course of treatment of Chestnut by defendants which commenced in June 1974, following Chestnut's involvement in an automobile accident.)

The next event of significance to the issues involved in this appeal occurred on November 5, 1982, when Chestnut filed a motion to amend her complaint. Chestnut alleged that as a result of a deposition which took place on November 3, 1982, she determined that the negligent care and treatment alleged in her initial complaint arose from facts other than those stated therein and that the "claim or demand sought to be amended" arose out of the same transaction or occurrence as that alleged in the initial complaint, "even though the original pleading was defective in that it failed to allege the performance of the act which is a necessary prerequisite to the plaintiff's right to recover."

On November 17, 1982 (prior to the time that the above motion was ruled upon), Chestnut filed, without leave of court, a "First Amended Complaint." At a hearing held on Chestnut's motion to amend and the objections of defendants thereto on December 13, 1983, Chestnut admitted that she inadvertently and erroneously filed her "First Amended Complaint" without leave of court, and that the only complaint properly on file at that time was the initial 1981 complaint. At the conclusion of the hearing, the court granted Chestnut leave to withdraw the document entitled "First Amended Complaint" and to file an amended pleading. Chestnut did so on February 1, 1984, and on the same date the court struck the amended complaint with leave to further amend.

Chestnut filed her second amended complaint on February 15, 1984. The allegations of this complaint are similar to those of the first amended complaint filed February 1, 1984. The gist of both amended complaints is that on June 4, 1974, defendant Adeli performed a left femoral plating and open reduction with screw fixation of Chestnut's severely fractured left femur; that this was the improper procedure to remedy Chestnut's condition; and that during the remainder of Adeli's

and Lakeview Hospital's (Lakeview) treatment (which ended on August 15, 1978), Adeli and Lakeview failed to take other proper steps to cause Chestnut's fractured left femur to heal, and did not advise Chestnut of the true cause of her continuing affliction. Chestnut's second amended complaint was likewise dismissed on defendants' motion following a hearing held April 24, 1984.

OPINION

■ The first question which we must determine is whether Chestnut's amended complaints alleging a cause of action based on the entire course of treatment beginning in 1974 (as distinguished from the act of inserting a Kuntscher rod of improper length in 1977) may for limitations purposes be deemed to have been first filed in 1981 (when Chestnut filed her initial complaint) or in 1984. Section 2—616(b) of the Code of Civil Procedure (Ill. Rev. Stat. 1983, ch. 110, par. 2—616(b)) provides that an amended complaint relates back to the time of the filing of the initial complaint if the initial complaint was timely filed and "if it shall appear from the original and amended pleadings that the cause of action asserted *** in the amended pleading grew out of the same transaction or occurrence set up in the original pleading." The circumstances under which an amended complaint may be deemed to relate back to the date of filing of the initial complaint were ably stated by the court in *Krieger v. Village of Carpentersville* (1972), 8 Ill. App. 3d 243, 246-47, 289 N.E.2d 481, 483:

> "The right to amend and the relation back of an amendment *** depend on whether the original complaint furnishes to the defendant all of the information necessary to prepare its defense to the claim subsequently asserted in the amended complaint. [Citation.] The requirement that a cause of action be stated at the outset with precise accuracy has been shifted to a test of the identity of the transaction or occurrence, on the rationale that the defendant has not been prejudiced so long as his attention has been directed to the facts which form the basis of the claim within the prescribed time. [Citation.]"

The 1981 complaint, alleging as it did medical malpractice on the basis of the insertion of a Kuntscher rod of improper length, cannot reasonably be said to have furnished the defendants with all of the information necessary to defend against the amended complaint. Indeed, the only reasonable conclusion which defendants could have drawn from the 1981 complaint was that Chestnut sought to hold them liable for medical malpractice solely on the basis of the insertion of a Kuntscher rod of improper length in 1977. The mutual exclusivity of the

causes of action asserted in the initial 1981 complaint and the 1984 amended complaints is demonstrated by Chestnut's complete failure to allege the insertion of a Kuntscher rod of improper length as a cause of the damages alleged in the 1984 amended complaints. Moreover, it is not inconceivable that the defendants would be prejudiced by now having to defend against the allegations of the 1984 amended complaints, since in reliance on the 1981 complaint, defendants may well have failed to take the steps necessary to preserve evidence pertaining to their treatment of Chestnut prior to December 1977.

Chestnut seeks to demonstrate that the 1984 complaints state the same cause of action as the 1981 complaint and may thus be deemed timely filed, by pointing out that the events mentioned in both the 1984 and 1981 complaints were part of the same continuous course of treatment. The only cases which she cites in support of this argument are *Connell v. Hayden* (1981), 83 App. Div. 2d 30, 443 N.Y.S.2d 383, and *Schmit v. Esser* (1931), 183 Minn. 354, 236 N.W. 622, which hold that for statute of limitations purposes, a cause of action as to any act occurring within a continuous course of treatment should not be deemed to accrue until the end of the entire course of treatment.

An evaluation of this portion of Chestnut's argument requires a determination of the period of limitations applicable to the causes of action which Chestnut sought to state in her 1984 amended complaints. Medical malpractice actions must be filed within two years of the date of discovery of the wrongful causation of injuries by improper medical treatment, but in no event may such actions be brought more than four years after the act or omission forming the basis for the action. (Ill. Rev. Stat. 1983, ch. 110, par. 13—212.) The present medical malpractice statute of limitations, which became effective September 19, 1976, is applicable to causes of action in existence as of its effective date if such causes of action were not instantaneously barred as of its effective date, and a reasonable period of time remained within which to file the action subsequent to the statute's effective date. (*Anderson v. Wagner* (1979), 79 Ill. 2d 295, 402 N.E.2d 560.) It is thus seen that the latest date on which Chestnut could have filed a cause of action based on the defendants' alleged improper course of treatment beginning in 1974 (assuming that the continuous course of treatment doctrine is applicable) was August 15, 1982, four years after the admitted termination of that course of treatment.

*Connell* and *Schmit* did not deal with the situation where, as here, the plaintiff attempts to assert an entirely new cause of action after the statute of limitations has run as to all aspects of the continuous course of treatment. Stated somewhat differently, in the two cases on

which Chestnut relies the action was timely filed *prior* to the time that the period of limitations expired as to the last act in the course of treatment. In the instant case, by contrast, the causes of action which Chestnut attempted to state in the 1984 amended complaints were filed *after* the statute of limitations had run as to the last act in defendants' treatment of Chestnut.

None of the cases cited by Chestnut in support of her assertion that her alleged actions were timely filed require a result different from that which we reach. *Cutsinger v. Cullinan* (1979), 72 Ill. App. 3d 527, 391 N.E.2d 177, *Jones v. Brill* (1981), 97 Ill. App. 3d 943, 423 N.E.2d 930, and *Mega v. Holy Cross Hospital* (1984), 122 Ill. App. 3d 720, 462 N.E.2d 637, all involved causes of action which were *instantaneously* barred by the 1976 amendment to the medical malpractice statute of limitations. In the present case, by contrast, Chestnut had a minimum of 20 months (from September 19, 1976, until June 1978) in which to file a cause of action based on any act or omission occurring during the course of Adeli's and Lakeview's course of treatment. *Champaign County Nursing Home v. Petry Roofing, Inc.* (1983), 117 Ill. App. 3d 76, 452 N.E.2d 847, dealt with the repeal of a savings clause contained in an amended statute of limitations, which repeal instantaneously barred a cause of action which the savings clause had kept alive. We there held that the plaintiff's cause of action was barred because it had a reasonable time prior to the repeal of the savings clause in which to bring its action. Thus, none of the cases on which Chestnut relies are factually apposite to the case at bar.

Chestnut finally attempts to salvage her alleged causes of action by asserting that the defendants are equitably estopped from raising the statute of limitations as a defense. In support of this position, Chestnut relies specifically upon defendants' failure to inform her of the "surgical and post-operative procedures available, as well as the treatments of choice for her particular physical and mental state" prior to the June 7, 1974, surgery or at least prior to August 1978. Chestnut further asserts that the defendants' "limiting" of medical records provided to Dr. Bussey (the physician whom she consulted after terminating her treatment with defendants) inhibited her determination of the cause of her ill-being at an earlier date.

The doctrine of equitable estoppel represents merely an application of the fundamental principle that a litigant will not be permitted to take advantage of his own wrongdoing. The doctrine has been applied to prevent a litigant, whose conduct has caused a plaintiff to delay filing suit until after the period of limitations has run, from asserting the statute of limitations as a bar to the action. (*Real v. Kim*

(1983), 112 Ill. App. 3d 427, 445 N.E.2d 783; see *Witherell v. Weimer* (1981), 85 Ill. 2d 146, 421 N.E.2d 869.) However, where the lulling of the plaintiff into inaction ceases months before the statute of limitations bars an action, and the plaintiff thereafter has ample time and opportunity to seasonably file his or her complaint, the doctrine of equitable estoppel is inapplicable. *Reat v. Illinois Central R.R. Co.* (1964), 47 Ill. App. 2d 267, 197 N.E.2d 860.

With respect to the alleged failure of defendants to advise Chestnut of the available surgical and post-operative procedures and treatment of choice, these actions admittedly occurred before Chestnut's course of treatment ended, and Chestnut does not maintain that the defendants had an obligation to inform her of these matters after that time. Thus, if the continuous course of treatment doctrine is deemed applicable, Chestnut had ample time after the conduct providing the basis for the alleged estoppel ceased in which to file her action.

■ Regarding the second asserted basis for the application of the doctrine of estoppel—the "limitation" of medical records provided to Dr. Bussey—the only medical records mentioned in this portion of Chestnut's estoppel argument are the X rays of Chestnut's injured femur. The defendants' alleged failure to promptly supply these X rays likewise does not provide a basis for estopping defendants from asserting the statute of limitations. Chestnut very probably had a basis for believing that her ill-being was caused by the conduct of defendants when she sought treatment from Dr. Bussey in 1978, and she certainly had a basis for so believing when she filed her suit against defendants in 1981. Even if she is deemed to have first obtained knowledge that her ill-being was caused by defendants on or shortly before the date that she filed her initial complaint in 1981, she nevertheless had over one year (assuming the applicability of the continuous course of treatment doctrine) in which to utilize discovery procedures to obtain necessary X rays before the cause of action asserted in her amended complaint became barred. There is no indication that she made full use of all available discovery procedures and sanctions in order to obtain the X rays prior to that date.

In an adversary setting, it is extremely unusual, if not unheard of, for one party to voluntarily provide documentary evidence to the opposing party. In fact, to do so might well constitute a breach of ethical standards on the part of the attorney voluntarily providing such information. When the availability of discovery procedures and sanctions is considered, it would be unreasonable to hold that failure to voluntarily surrender discoverable documents provides a basis for an estoppel to assert the statute of limitations.

Moreover, Dr. Bussey asserted in an affidavit that he first saw the X rays on December 1, 1982. And, as previously stated, Chestnut cannot be deemed to have filed her suit until February 1, 1984. Also, Dr. Bussey stated in his affidavit that upon viewing the X rays, his opinion that the nonunion of Chestnut's left femur and her ensuing problems were attributable to improper performance of the initial plating procedure in 1974 was *confirmed.* The above matters are, in our view, strong evidence that lack of the X rays prior to the time that the period of limitations expired was not an important factor in causing Chestnut's asserted actions to become barred by the statute of limitations.

As a basis for her contention that this is a proper case for the application of the doctrine of equitable estoppel, Chestnut cites *Magana v. Elie* (1982), 108 Ill. App. 3d 1028, 439 N.E.2d 1319, and *Guy v. Schuldt* (1956), 236 Ind. 101, 138 N.E.2d 891. Neither of these cases, however, discusses the applicability of the principle of equitable estoppel to a specific factual situation. The present case is also distinguishable from *Witherell v. Weimer* (1981), 85 Ill. 2d 146, 421 N.E.2d 869, in that Chestnut, unlike Witherell, did not act with reasonable diligence in filing her suit upon ending her relationship with the defendants. Rather, she waited more than five years after she ceased her course of treatment with defendants before asserting causes of action based on defendants' alleged acts of negligent treatment.

Finally, we note parenthetically that Chestnut seems to imply that the trial court may have abused its discretion in denying her leave to file a further amended complaint. However, we note that Chestnut did not file a formal written request for leave to further amend, and that her oral statement at the hearing on the motion to dismiss her second amended complaint did not demonstrate that an additional amended complaint would have contained allegations materially different from those of the first and second amended complaints. Under these circumstances, the circuit court did not abuse its discretion in denying Chestnut leave to further amend. *Deasey v. City of Chicago* (1952), 412 Ill. 151, 105 N.E.2d 727; *Urfer v. Country Mutual Insurance Co.* (1978), 60 Ill. App. 3d 469, 376 N.E.2d 1073.

Finding no merit in any of Chestnut's allegations as to the impropriety of the trial court's dismissal of her second amended complaint, we affirm that court's judgment.

Affirmed.

GREEN, P.J., and TRAPP, J., concur.