JACQUELINE FLYNN, Plaintiff-Appellant, v. THOMAS J. SZWED, Defendant-Appellee.

First District (6th Division)   No. 1—90—2825

Opinion filed December 27, 1991.

Michael W. Rathsack, of Chicago (David B. Selig and Kenneth R. Nix, of counsel), for appellant.

Pretzel & Stouffer, Chartered, of Chicago (Robert Marc Chemers and Scott O. Reed, of counsel), for appellee.

JUSTICE McNAMARA delivered the opinion of the court:

Plaintiff, Jacqueline Flynn, brought this medical negligence action against defendant Dr. Thomas Szwed, D.O., an osteopath, for his alleged failure to diagnose hyperparathyroidism. Defendant filed a petition for summary judgment on the ground that allegations in the first amended complaint as to 1978 and 1979 care were barred under the four-year statute of repose for medical negligence actions. (Ill. Rev. Stat. 1989, ch. 110, par. 13—212.) The trial court granted the motion and denied plaintiff's motion for leave to amend her complaint, and plaintiff appeals.

Plaintiff first saw defendant in February 1977. She complained of fatigue, pain, headaches, dryness of the mouth and swollen glands. On

February 24, 1977, defendant ordered tests of plaintiff's serum calcium levels in order to determine whether plaintiff suffered from hyperparathyroidism. Such condition arises when the parathyroid gland produces excessive levels of the hormone that controls the level of calcium in the blood and bone. Although the results indicated an elevated serum calcium level, defendant did not diagnose plaintiff with hyperparathyroidism at this time.

On March 1, 1977, plaintiff returned to defendant's office complaining of an upper respiratory infection. Defendant treated plaintiff for upper back pain on March 14, 1977, and pursuant to defendant's orders, plaintiff was hospitalized from March 19 to 24, 1977, for a diagnostic work-up. Defendant diagnosed plaintiff as having diabetes and prescribed a diet program. Defendant saw plaintiff on March 31 for a follow-up visit after her hospitalization, and on April 19, 1977, for plaintiff's complaints of low back pain. Defendant saw plaintiff again on April 25 and May 19, 1977, to monitor her diet and her low back pains. On July 11, defendant examined plaintiff and released her to return to work after concluding that she had lost weight and had followed the prescribed diet. Defendant last treated plaintiff in 1977 on December 29 for an upper respiratory infection. Defendant did not discharge plaintiff from his care in 1977.

Defendant did not treat plaintiff in 1978. Plaintiff saw defendant three times in 1979; on April 22 and 27 for low back pain, and on April 30 for a routine dietary and weight check.

In April and May 1980, Dr. Karl, defendant's associate, examined plaintiff twice; defendant did not participate in these examinations. Plaintiff alleged that defendant advised her that she suffered from a diabetic and kidney condition which required hospitalization. In late May and early June 1980, upon defendant's advice and instruction, plaintiff was hospitalized and a kidney stone was removed. In July 1980, surgery was performed on her parathyroid gland by a different doctor.

In 1981, plaintiff filed an action alleging that defendant negligently treated her in 1980, which she later voluntarily dismissed. In September 1982, plaintiff refiled the complaint (the original complaint) which alleged that plaintiff consulted defendant on or about April 9, 1980, and that defendant treated her "at the time and place aforesaid, and for a period of time thereafter." The complaint did not refer to any treatment by defendant prior to April 1980, but alleged that defendant failed to diagnose her condition as hyperparathyroidism. Defendant's answer stated that he treated plaintiff from 1977

through 1980, but asserted the statute of limitations as an affirmative defense.

In September 1984, plaintiff filed her first amended complaint which stated that defendant treated plaintiff during 1979 and 1980 and that he failed to diagnose her hyperparathyroidism. She alleged that she did not know nor could she have reasonably known of defendant's negligent conduct until July 1980. Plaintiff charged that defendant had a duty to treat plaintiff "in accordance with the accepted standards of care in the years 1978, 1979 and 1980," but did not allege that plaintiff consulted defendant during 1978.

In his answer, defendant stated that he treated plaintiff in 1977, 1979 and 1980, but restated the limitations defense. Defendant's amended affirmative defense alleged that he last treated plaintiff for diabetes and a kidney condition in 1977, and that she knew or should have known of her allegations in 1977.

At his deposition, plaintiff's expert witness, Dr. Bitran, testified that plaintiff suffered from hyperparathyroidism from 1977 on. In his opinion, although defendant ordered the proper tests to diagnose the condition and observed an elevated hormone level, defendant failed to take proper medical action in 1977. Dr. Kessel, defendant's expert, testified that defendant had pursued the diagnosis as hyperparathyroidism, but was justified in not reaching that diagnosis in 1977. Kessel agreed that plaintiff was in the early stages of hyperparathyroidism in 1977, but stated that he would not attribute her symptoms to such condition because asymptomatic patients also show elevated hormone levels.

The case was assigned to trial in 1989. In October 1989, defendant filed two motions. His supplemental motion *in limine* sought to bar any reference to defendant's 1977 treatment on the ground that neither the original complaint nor the first amended complaint alleged 1977 care, and such allegations were thus barred by the statute of repose, having occurred more than four years before plaintiff filed her original complaint in 1982. Defendant's motion for summary judgment recited that the first amended complaint, filed in 1984, alleged 1978 and 1979 treatment which was not alleged in the original complaint and thus was barred by the statute of limitations.

The trial court granted summary judgment for defendant on the first amended complaint, noting that plaintiff could have included the 1977 allegations in her initial complaint and rejecting plaintiff's argument that defendant engaged in a continuing course of treatment. Plaintiff thereafter moved for leave to amend her complaint, which proposed amendment alleged that: defendant treated plaintiff from

1977 to 1980; such care was a continuous treatment program for her symptoms of hyperparathyroidism; and although defendant included hyperparathyroidism as part of her differential diagnosis in 1977, he misinterpreted the tests and failed to properly diagnose plaintiff. The trial court denied plaintiff's motion for leave to amend and her subsequent motion for reconsideration.

Two procedural issues are presented by this appeal: whether the trial court erred in granting summary judgment for defendant and whether the trial court erred in denying plaintiff's motion for leave to amend her complaint.

Summary judgment is properly awarded when "the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Ill. Rev. Stat. 1989, ch. 110, par. 2—1005(c).

■ On appeal, plaintiff claims that the trial court erred in concluding that the first amended complaint did not relate back to the original complaint and, thus, improperly granted summary judgment for defendant on this basis. Relevant here are both the Illinois statute of repose for medical negligence actions and the relation back statute. Section 13—212 of the Code of Civil Procedure precludes a plaintiff from filing a medical malpractice action more than two years after plaintiff knew or should have known of her injury or more than four years after the date of the alleged misconduct. (Ill. Rev. Stat. 1989, ch. 110, par. 13—212(a).) After voluntarily dismissing the complaint filed in 1981, plaintiff refiled her complaint in September 1982. The first amended complaint, filed in 1984, alleged medical negligence which occurred more than six years earlier. Therefore, the amended complaint was timely only if the cause of action in the amended complaint relates back to the original cause of action as filed in 1982.

■ Section 2—616 of the Code of Civil Procedure provides that a cause of action raised by amendment is not barred by the statute of limitations if: (1) the original complaint was timely filed; and (2) the action asserted in the amendment grew out of the occurrence set out in the initial complaint. (Ill. Rev. Stat. 1989, ch. 110, par. 2—616(b); *Wolf v. Meister-Neiberg, Inc.* (1991), 143 Ill. 2d 44, 570 N.E.2d 327.) Moreover, an amended complaint relates back only when the original complaint supplies defendant with "all the information necessary to prepare the defense to the subsequently asserted claim." *Seibert v. Cahill* (1988), 173 Ill. App. 3d 545, 548, 527 N.E.2d 1042, 1044.

In reaching its decision, the trial court relied on *Jordan v. Lind* (1988), 176 Ill. App. 3d 530, 531 N.E.2d 168, and *Chestnut v. Adeli*

(1985), 131 Ill. App. 3d 24, 475 N.E.2d 260. In *Chestnut*, plaintiff's original complaint alleged that defendant tortiously inserted a metal rod in her leg in 1977. Plaintiff had undergone a course of treatment by defendants since an auto accident in 1974. In 1984, plaintiff sought to amend her complaint to allege that in 1974 defendants used an improper procedure in treating an injury to her left femur, maintaining that such claim arose out of the same occurrence as the original complaint and therefore was timely. This court determined that "the only reasonable conclusion which defendants could have drawn from the 1981 complaint was that [plaintiff] sought to hold them liable for medical malpractice solely on the basis of the insertion of [the metal rod] in 1977." (*Chestnut*, 131 Ill. App. 3d at 27, 475 N.E.2d at 262.) The court determined that it was "not inconceivable" that defendants would be prejudiced by having to defend against allegations in the amended complaint because, in relying on the original complaint, defendants may have failed to preserve evidence regarding treatment prior to the time period alleged in the original complaint. *Chestnut*, 131 Ill. App. 3d at 28, 475 N.E.2d at 262.

In *Jordan v. Lind*, plaintiff filed a complaint in February 1980 which alleged medical negligence in February 1978. Plaintiff refiled the case in January 1982 in a different county, again alleging February 1978 negligence. In May 1984, plaintiff sought leave to file a second amended complaint to add allegations of January 1978 negligence. This court held that the statute of repose barred these allegations because the proposed second amendment was filed more than four years after the alleged January 1979 negligence. The court, relying on *Chestnut*, noted that defendant had no reason to suspect that either the original or refiled complaint related to anything other than the February 1978 conduct. The court also held that because the January and February treatments were two different medical treatments, they were not part of the same transaction or occurrence, and the proposed amendment did not relate back to the original filing. *Jordan*, 176 Ill. App. 3d at 535-36, 531 N.E.2d at 171-72.

■ We believe that the trial court properly relied upon *Jordan* and *Chestnut*. In both cases, as here, although the original complaints were timely, the later amendments sought to add allegations more than four years after the alleged negligent conduct. In this case, plaintiff sought to raise issues regarding 1978 and 1979 care in her first amended complaint in 1984, five and six years after such alleged negligence. We find nothing in the original complaint that relates to anything other than defendant's 1980 or post-1980 conduct. Moreover, the original complaint cannot reasonably be said to have given defend-

ant notice that he would be required to defend his conduct during any earlier treatment. Indeed, plaintiff's original complaint alleges in pertinent part as follows:

"1. That *on or about the 9th day of April, 1980,* [plaintiff] consulted [defendant] for professional medical services.

2. That *at said time and place* [defendant] was a physician and surgeon \*\*\*.

3. That *at said time and place aforesaid, and for a period of time thereafter,* [defendant] did in his professional capacity attend and treat [plaintiff].

4. That *at all times referred to herein* [plaintiff] was in the exercise of ordinary care for her own safety.

5. That *on or about the 23rd day of May, 1980,* upon the advice and instruction of [defendant], [plaintiff] was admitted as a patient to the [hospital].

6. That *on or about the 2nd day of June, 1980,* [plaintiff] upon the advice and instruction of [defendant], was readmitted to the [hospital].

\* \* \*

12. That *at the time and place aforesaid and during the period of time, the [p]laintiff was under the care of the [d]efendant,* [defendant] was *then* and there guilty of one or more of all of the following wrongful acts or omissions:

(a). Carelessly and negligently failed to properly evaluate [p]laintiff's continuous decline in health \*\*\*;

(b). Carelessly and negligently failed to properly diagnose and treat [p]laintiff's condition of ill-being;

(c). Carelessly and negligently failed to provide proper medical attention while [p]laintiff was in a hospital under the care and control and at the direction of [d]efendant;

(d). Carelessly and negligently failed to conduct the usual, customary and necessary diagnostic studies to determine the nature and extent of [p]laintiff's state if [*sic*] ill-being;

(e). Carelessly and negligently failed to treat and otherwise provide proper medical attention before hospitalization during hospitalization and following hospitalization so that as a result of said neglect, [p]laintiff did become critically ill." (Emphasis added.)

Under *Chestnut* and *Jordan,* the only reasonable conclusion that defendant could have drawn from the original complaint was that plaintiff sought to hold him liable for his alleged misconduct in April and May of 1980 and thereafter. Indeed, the dates specified through-

out and the allegations in paragraph 12 center around plaintiff's 1980 hospitalization. Further, it is conceivable that defendant would be prejudiced by being required to defend against the first amended complaint because, in reliance on the original complaint, defendant may not have taken necessary steps to preserve evidence pertinent to his treatment of plaintiff prior to 1980. *Chestnut v. Adeli*, 113 Ill. App. 3d 24, 475 N.E.2d 260.

Plaintiff argues that even though the original complaint referred only to defendant's 1980 conduct, the complaint implicitly covers the pre-1980 treatment because defendant's alleged failure to diagnose plaintiff's condition continued during the entire course of treatment. However, the complaint's explicit allegations are not consistent with this argument.

We also reject plaintiff's argument that defendant's acknowledgement in his answer to the originally filed complaint that the treatment began in 1977 indicates that defendant understood that the allegations against him related to pre-1980 care. It does not follow from defendant's awareness that he treated plaintiff from 1977 to 1980 that defendant knew that plaintiff claimed defendant's negligence from the start of treatment in 1977, especially given the original complaint's explicit and contrary references. Nor does it relieve plaintiff of the requirement to allege facts showing when defendant acted negligently. (See *Doyle v. Shlensky* (1983), 120 Ill. App. 3d 807, 458 N.E.2d 1120.) Plaintiff chose to allege defendant's 1980 "and subsequent conduct," and cannot later add allegations regarding earlier conduct on the basis that defendant knew that he treated her at an earlier time. Plaintiff's original complaint simply failed to put defendant on notice that he would be required to defend his conduct during any treatment of plaintiff before 1980.

Plaintiff offers an alternative argument based upon the continuous course of treatment doctrine. Under the continuous treatment doctrine, "a cause of action as to any act occurring within a continu-[ing] course of treatment should not be deemed to accrue until the end of the entire course of treatment." (*Jacobson v. Natonson* (1987), 164 Ill. App. 3d 126, 131, 517 N.E.2d 304, 307-08.) When this doctrine applies, the statute of limitations is tolled. Plaintiff contends that the allegations to pre-1980 care in the first amended complaint were timely because defendant's continuous treatment of plaintiff did not end until 1980. Defendant responds that his 1980 treatment was not part of a continuous course of treatment of plaintiff and, therefore, failed to toll the limitations period. We agree with defendant and

hold that the trial court properly rejected the continuous treatment doctrine.

■ We conclude that defendant's treatment of plaintiff during the period from 1977-1980 was neither "continuous treatment" nor treatment "for the same specific condition" sufficient to toll the running of the limitations period. This court has stated that "[m]erely intermittent or occasional medical services at substantial intervals" do not satisfy the continuing treatment doctrine. (*Aznel v. Gasso* (1987), 154 Ill. App. 3d 785, 788, 507 N.E.2d 83, 86.) In *Aznel*, defendant treated plaintiff regularly for more than 2½ years, then moved to another State and referred plaintiff to a different doctor. After receiving treatment from two different doctors over the next 10 years, plaintiff located the out-of-State defendant doctor and underwent an examination under his care. This court determined that the continuous treatment doctrine did not apply, viewing the final visit as "an isolated service that followed a substantial interval." (*Aznel*, 154 Ill. App. 3d at 789, 507 N.E.2d at 86.) The court emphasized the 10-year gap and noted that the doctor-patient relationship terminated when defendant moved and referred plaintiff to another doctor.

The record in this case reveals defendant's intermittent and sporadic treatment of plaintiff. After the final 1977 visit on December 29, defendant did not treat plaintiff again until April 1979, more than 15 months later. Defendant saw plaintiff three times during a two-week period and then did not treat her again for a full year. Although the gap here was not as lengthy as that in *Aznel*, we do not believe that a year-long regular course of treatment, followed by a 15-month gap, two weeks of treatment and a 12-month gap, constitutes "continuous treatment" sufficient to toll the limitations period. The statute of limitations would become meaningless if limitations periods could be extended as urged here. Moreover, we reject plaintiff's argument that a misdiagnosis by its very nature is a "continuous" act.

Nor does the record show that defendant treated plaintiff for the same "specific condition" between 1977 and 1980. (*Daly v. Carmean* (1991), 210 Ill. App. 3d 19, 29, 568 N.E.2d 955, 961; *Neaterour v. Holt* (1989), 188 Ill. App. 3d 741, 747, 544 N.E.2d 846, 851; *Jacobson v. Natonson* (1987), 164 Ill. App. 3d 126, 132, 517 N.E.2d 304, 308.) In *Daly*, a podiatrist treated plaintiff for more than three years for bunions and hammertoe conditions on both feet. In *Jacobson*, plaintiff alleged that defendant, a dentist, failed to properly diagnose her gum condition. Unlike *Daly* and *Jacobson*, in which defendants' practices were limited in scope and specialized, defendant here is an osteopath whose practice is general in nature. Indeed, plaintiff admitted during

discovery that defendant treated her for various complaints, including: extreme fatigue, swollen glands, back and flank pain, blood in the urine, dryness of the mouth, headaches, colds and an upper respiratory infection. Nothing in the record indicates that these were all symptoms of hyperparathyroidism. Moreover, the record indicates that defendant pursued various treatments including a diet, manipulative therapy, antibiotics, appetite suppressants and other medications. Given the broad range of plaintiff's ailments and defendant's prescribed remedies, we conclude that defendant did not treat plaintiff for the "same specific condition" between 1977 and 1980.

For the foregoing reasons, we conclude that defendant's pre-1980 care of plaintiff did not constitute continuous treatment for a specific condition sufficient to toll the limitations period. The trial court, therefore, properly concluded that the pre-1980 allegations were barred by the statute of repose (Ill. Rev. Stat. 1989, ch. 110, par. 13—212(a)), and properly granted summary judgment for defendant on this issue.

■ Finally, we consider plaintiff's claim that the trial court erred in denying her motion for leave to file a second amended complaint to add allegations regarding 1977 care. A trial court's authority to allow amendment of a complaint is to be liberally exercised. (*Kupianen v. Graham* (1982), 107 Ill. App. 3d 373, 437 N.E.2d 774.) There is no absolute right to amend pleadings and "the timeliness of such a request is a discretionary determination" for the trial judge. (*Hall v. Northwestern University Medical Clinics* (1987), 152 Ill. App. 3d 716, 722, 504 N.E.2d 781, 785.) Among factors to be considered are the following: whether the amendment cures a defect in the pleadings; whether it would cause prejudice or surprise to other parties; whether previous opportunities to amend could be identified; and the timeliness of the amendment. (*Schwaner v. Belvidere Medical Building Partnership* (1987), 155 Ill. App. 3d 976, 508 N.E.2d 522.) Applying these factors to this case, we cannot say that the trial court abused its discretion in denying plaintiff's motion for leave to amend. The original complaint sought to impose liability based upon defendant's negligence in 1980. We cannot say that the proposed second amendment, which added allegations regarding 1977, would cure a defect. Rather, such amendment attempted to increase defendant's potential liability. Nor does the record reveal any reason why plaintiff could not have included 1977 allegations in the 1981 action, the refiled 1982 action or in the 1984 first amended complaint. Indeed, plaintiff alleged that she knew about defendant's negligence in July 1980. Moreover, as indicated above, defendant may be prejudiced in having to de-

fend against allegations of negligence before 1980. Finally, the proposed amendment which added 1977 allegations was time barred. For these reasons, we cannot conclude that the trial court erred in denying plaintiff's motion for leave to amend her complaint.

■ Plaintiff also urges reversal of summary judgment on the ground that defendant's motion, filed after the case was assigned to trial, was untimely. Plaintiff suggests that the "late hour" of the motion belies defendant's claim that the new allegations surprised him. Under Illinois law, a defendant may file a summary judgment motion "at any time." (Ill. Rev. Stat. 1989, ch. 110, par. 2—1005(c).) *Rappeport v. Meltzer* (1990), 208 Ill. App. 3d 555, 567 N.E.2d 473, cited by plaintiff, is inapposite here. In *Rappeport*, this court found that defendant failed to exercise diligence in renewing his summary judgment motion after the trial court denied his initial summary judgment motion without prejudice to allow defendant to amend. Such is not the case here. Moreover, the record does not indicate that defendant intentionally delayed filing the motion, failed to set the motion for a timely hearing (*Athens v. Prousis* (1989), 190 Ill. App. 3d 349, 546 N.E.2d 695), or failed to give plaintiff adequate notice. (See *Midwest Bank & Trust v. Village of Lakewood* (1983), 113 Ill. App. 3d 962, 447 N.E.2d 1358.) As such, we cannot say that defendant's motion was untimely.

Although defendant's motion for summary judgment was limited to pre-1980 allegations, he urges us to grant summary judgment on his behalf as to the entire action. He makes this request on the basis of a comment made by plaintiff's counsel in the trial court. We find that defendant has taken the remark out of context. Consequently, nothing in our decision prohibits plaintiff from seeking relief pursuant to her 1982 complaint for defendant's alleged misconduct in 1980 and thereafter.

For the foregoing reasons, the order of the circuit court of Cook County granting summary judgment for defendant on all pre-1980 allegations is affirmed.

Judgment affirmed.

RAKOWSKI, P.J., and LaPORTA, J., concur.