LEON AVAKIAN *et al.*, Plaintiffs-Appellants, v. JACK CHULENGARIAN, Defendant and Third-Party Plaintiff (Jack Chulengarian, P.C., and Associates, *et al.*, Defendants and Third-Party Plaintiffs-Appellees; Robert Wolfe *et al.*, Defendants; Pfizer, Inc., Third-Party Defendant-Appellee).

Second District    No. 2—01—0089

Opinion filed March 8, 2002.

Stuart M. Brody, of William J. Sneckenberg & Associates, Ltd., of Chicago, for appellant.

Anji Dayal, Vincent Auricchio, and Shauna M. Gutilla, all of McBreen, Kopko, McKay & Nora, of Chicago, for appellee Jack Chulengarian.

Stephanie A. Scharf, Barry Levenstam, Traci M. Braun, and Aaron R. Pettit, all of Jenner & Block, of Chicago, for appellee Pfizer, Inc.

JUSTICE KAPALA delivered the opinion of the court:

Plaintiffs, Leon and Isabel Avakian, appeal the dismissal of four counts of their third amended complaint that were directed against Jack Chulengarian, P.C., & Associates (the corporation), and Northern Illinois Foot & Ankle Centres, Ltd. (NIFAC). These new allegations altered the plaintiffs' theory of vicarious liability by changing the identity of the treating physician-agent. The trial court ruled that they were filed beyond the four-year statute of repose (735 ILCS 5/13—212(a) (West 2000)). On appeal, plaintiffs assert that (1) the counts relate back to the original timely filed complaint; (2) the statute of repose does not bar the additional counts; (3) the affidavit and report pursuant to section 2—622 of the Code of Civil Procedure (Code) (735 ILCS 5/2—622 (West 1994)) were sufficient; and (4) the trial court erred in denying their motion for reconsideration. We reverse and remand.

## I. FACTS

This case involves injuries suffered by Leon Avakian after ingesting Diflucan, an oral medication prescribed to him for treatment of his athlete's foot. Which of two doctors examined Avakian and prescribed the medicine is hotly debated between the parties. Plaintiffs adamantly assert that Avakian was treated by Dr. Chulengarian, while the defendants assert Chulengarian was not involved in the care or treatment of Avakian. Rather, defendants assert that Avakian was treated by Dr. Kachigian. Kachigian is not a party to this lawsuit and is believed to be in Los Angeles.

Avakian visited NIFAC on May 13, 1996, in response to a newspaper offer for a free consultation. Physician services at NIFAC are provided by the corporation, through Chulengarian and Kachigian. Avakian was advised that he had a severe case of athlete's foot and was told to schedule a regular appointment for treatment. On May 21, 1996, Avakian reported back to NIFAC for a scheduled visit and was again examined and diagnosed with athlete's foot.

While the parties dispute the identity of the treating physician, it is undisputed that, during this May 21 visit to NIFAC, Avakian was given a prescription for Diflucan to treat the athlete's foot. Avakian was advised that, after two or three months, new nails would grow and the condition would be gone, and he was directed to follow up in two or three weeks. Apparently, the prescription was written and signed by Kachigian but was written on Chulengarian's prescription

pad, and it was Chulengarian's name that appeared on the prescription bottle. The prescription was filled at Walgreen's on May 25, 1996.

On June 16, 1996, Avakian reported to the emergency room of Condell Memorial Hospital complaining of heartburn and allegedly manifesting jaundice. He was treated by Doctors Engel and Stover, given aspirin, and sent home. The next day, Avakian still felt ill so he visited Dr. Wolfe, his regular physician, of American Family Medical Center. Wolfe took blood tests and again sent Avakian home. The following day, on June 18, 1996, Wolfe phoned Avakian and advised him that he had tested positive for a hepatitis-like disease, and they made an appointment for the next day to discuss treatment. However, before this appointment, plaintiff reported to the emergency room at Highland Park Memorial, where he was diagnosed with total liver failure and slipped into a coma-like condition. He was flown to Chicago and received a liver transplant on June 23, 1996.

On May 20, 1998, plaintiffs filed a 16-count complaint against various doctors and facilities. Counts I and II were directed against Chulengarian and alleged careless and negligent acts or omissions in the treatment of Avakian stemming from the treatment Avakian received on May 21, 1996. Counts III and IV, directed against the corporation and NIFAC, alleged that Chulengarian was the agent or employee of the corporation and NIFAC and that they were vicariously liable for the treatment rendered to Avakian by Chulengarian. Counts V through XVI were not directed against Chulengarian, the corporation, or NIFAC (collectively defendants), but were directed against other doctors and facilities that are not involved in this appeal.

The complaint was accompanied by a section 2—622 attorney affidavit (735 ILCS 5/2—622(a) (West 1994)), and eventually plaintiffs filed section 2—622 physician's reports. The report regarding the care received by Avakian on May 21, 1996, was concerned with the treatment rendered by NIFAC, the corporation, and Chulengarian, and named Chulengarian as the treating physician. It stated that medication with Diflucan calls for three months of medication, one tablet per day; that a base value of the patient's liver status should have been taken prior to initial treatment with Diflucan and then repeated 30 days later in order to verify that there was no liver dysfunction; and that the care provided by these defendants had failed to meet the applicable standard of care and therefore proximately caused Avakian's liver condition and his need for the transplant.

On November 19, 1998, in the midst of a flurry of separate motions to dismiss on behalf of the various defendants, Chulengarian filed a motion to dismiss pursuant to section 2—1010 of the Code. 735 ILCS 5/2—1010 (West 1998). Chulengarian asserted in his motion that

he was not "directly or indirectly" involved in the care of Avakian or the occurrences alleged. The trial court ordered the expedited and limited depositions of Avakian and Chulengarian for the purposes of ruling on the motion to dismiss, and both depositions were taken on January 11, 1999. Avakian testified that he recognized Chulengarian and that it was Chulengarian who treated him on May 21, 1996. Chulengarian's testimony during his own deposition was that he had no recollection of treating Avakian and the handwriting on Avakian's chart was not his own, did not look familiar, and must have been that of Kachigian. The court denied Chulengarian's motion.

Plaintiffs filed both a first and a second amended complaint, which alleged with more particularity that plaintiffs' injuries were caused by the prescription of Diflucan. Both of these amended complaints were supplemented by the same section 2—622 reports and affidavits. Defendants have not challenged the timeliness of either the first or second amended complaint. Defendants did, however, file a third-party complaint against Pfizer, Inc. (Pfizer), the manufacturer of the medication. On May 25, 2000, the plaintiffs amended their complaint for a third time, to add the four counts that are the subject of this appeal. Two of these four counts alleged a theory of vicarious liability against NIFAC and the corporation for the negligent treatment of Avakian by Kachigian. The remaining two counts alleged vicarious liability for Kachigian's treatment of Avakian based upon apparent authority. Plaintiffs did not retreat from their claim that Chulengarian was the treating physician, and they retained those allegations in the third amended complaint. These four counts were added in the alternative.

On November 14, 2000, pursuant to section 2—619(a)(5) of the Code (735 ILCS 5/2—619(a)(5) (West 2000)), the trial court granted Chulengarian's motion to dismiss the four counts of the third amended complaint as time-barred by the statute of repose (735 ILCS 5/13—212(a) (West 1998)). The trial court reasoned that plaintiffs had been aware since Chulengarian's deposition that his theory of defense was that he was not the treating physician. Since plaintiffs failed to add a theory of recovery based upon negligent treatment by Kachigian within four years, the trial court held that the additional counts were beyond the statute of repose. Further, because the addition of the four counts would necessitate that defendants prepare a different defense, *i.e.*, no treatment as opposed to nonnegligent treatment, the trial court found that defendants would be prejudiced and held that the amendments did not relate back to an original timely filed complaint.

In their motion, defendants also asserted that the section 2—622 report spoke to treatment rendered by Chulengarian rather than Kachigian, and therefore could not support the four additional counts.

Whether or not the trial court relied on this basis for granting the motion to dismiss is not clear from its order. Plaintiffs filed a motion for reconsideration, which was denied on January 4, 2001. Plaintiffs timely appealed pursuant to Supreme Court Rule 304(a) (155 Ill. 2d R. 304(a)).

## II. DISCUSSION

We first address plaintiffs' contention on appeal that Pfizer lacks standing to assert its position on this matter. It has been recognized that there is a need for a liberal method of appeal in multiparty litigation. See *Kenney v. Churchill Truck Lines, Inc.*, 6 Ill. App. 3d 983, 989 (1972). Pfizer is a party to this multiparty lawsuit and will be affected by our ruling inasmuch as its liability is derived from that of the defendants who seek to affirm the trial court's ruling. As a party to this lawsuit whose liability is directly affected by our resolution of this matter, Pfizer has standing to argue to this court and be heard regarding such resolution. Furthermore, while not raised by Pfizer or any other party, we recognize that Pfizer's interest in this appeal is further exemplified by the collateral issue of whether the third-party complaint, filed against it on May 22, 2000, is also time-barred.

### A. Repose Period and Relation-Back Doctrine

■ A cause of action may be dismissed if it has not been "commenced within the time limited by law." 735 ILCS 5/2—619(a)(5) (West 2000). A motion to dismiss pursuant to section 2—619 of the Code (735 ILCS 5/2—619 (West 2000)) admits the legal sufficiency of the complaint and all well-pleaded facts and the inferences drawn therefrom, but asserts an affirmative matter that avoids or defeats the claim. *Ferrara v. Wall*, 323 Ill. App. 3d 751, 754 (2001). The dismissal of a complaint due to its failure to have been filed within the appropriate time limits is reviewed *de novo*. *Ferrara*, 323 Ill. App. 3d at 754.

■ Plaintiffs' medical malpractice action must be filed within the time period provided in section 13—212(a) of the Code of Civil Procedure (735 ILCS 5/13—212(a) (West 1998)), which mandates that an action against a physician arising out of patient care must be brought within two years after the claimant knew or should have known of the injury for which the damages are sought. 735 ILCS 5/13—212(a) (West 2000). The section further states:

> "[I]n no event shall such action be brought more than 4 years after the date on which occurred the act or omission or occurrence alleged in such action to have been the cause of such injury or death." 735 ILCS 5/13—212(a) (West 1998).

Thus, the section provides both the statute of limitations and the statute of repose applicable to plaintiffs' cause. The repose period of four

years serves to keep the incorporated discovery rule from rendering the limitations period without end. *Meyers v. Underwood*, 316 Ill. App. 3d 970, 986 (2000). Accordingly, while the limitations period does not begin to run until the plaintiff discovers the injury, the repose period begins to run as soon as the negligent act occurs and does so without regard to the plaintiff's knowledge of injury. *Ferrara*, 323 Ill. App. 3d at 755.

Plaintiffs' third amended complaint was filed on May 25, 2000. The parties appear to agree that May 21, 1996, the day the prescription for Diflucan was given to Avakian, began the repose period. Assuming this is true, the amended complaint, filed four years and four days after May 21, 1996, is outside the statutory repose period. However, plaintiffs assert that their third amended complaint is not barred by the four-year statute of repose, because it sufficiently relates back to their timely filed complaint. See 735 ILCS 5/2—616(b) (West 2000).

■ Section 2—616 of the Code provides that a pleading may be amended any time before final judgment. 735 ILCS 5/2—616(a) (West 2000). The amended pleadings may change the cause of action and will not be time-barred so long as (1) the original pleading was timely filed and (2) the cause of action added in the amended pleading grew out of the same transaction or occurrence as was set up in the original pleading. 735 ILCS 5/2—616(b) (West 2000). The "original pleading" need not be the first complaint filed, but can be an amended pleading so long as it was also filed within the appropriate time period. See *Digby v. Chicago Park District*, 240 Ill. App. 3d 88, 91 (1992). Because defendants do not challenge the timeliness of either the first or second amended complaint, we find they, also, are "timely filed" for purposes of section 2—616(b) (735 ILCS 5/2—616(b) (West 2000)).

Section 2—616(b) provides that an amended claim will not be barred by the statute of repose, even if filed outside the four-year period, as long as it relates back to an original timely filed complaint. *Zeh v. Wheeler*, 111 Ill. 2d 266, 270-71 (1986); *Marek v. O.B. Gyne Specialists II, S.C.*, 319 Ill. App. 3d 690, 702-03 (2001). Thus, we must determine if the four counts of the third amended complaint that allege a theory of vicarious liability against the corporation and NIFAC for the acts and omissions of Kachigian sufficiently relate back to any of the three previous, timely filed complaints, which alleged a theory of vicarious liability for the acts and omission of Chulengarian. In other words, we must decide whether an amendment that alleges that a principal is vicariously liable for the acts of an agent relates back to an original timely filed pleading where both pleadings allege vicarious liability and the only factual discrepancy between the two is the identity of the agent. See *Zeh*, 111 Ill. 2d at 277.

■ We first note the liberality with which courts are to construe a plaintiff's pleadings. Section 2—603(c) of the Code of Civil Procedure explicitly provides that pleadings are to be liberally construed in order to do substantial justice between the parties. 735 ILCS 5/2—603(c) (West 2000). Further, the "relation back" doctrine, located in section 2—616, is remedial in nature and should be applied liberally to favor hearing a plaintiff's claim. *Bryson v. News America Publications, Inc.*, 174 Ill. 2d 77, 106 (1996). Thus, plaintiffs are not to be barred from having the merits heard because of technical rules of pleading, and courts are to elevate issues of substance over form. *Jablonski v. Rothe*, 287 Ill. App. 3d 752, 754-55 (1997). Medical malpractice plaintiffs, in particular, are afforded every reasonable opportunity to establish a case, and to this end, amendments to pleadings are liberally allowed to enable the action to be heard on the merits rather than brought to an end because of procedural technicalities. *Peterson v. Hinsdale Hospital*, 233 Ill. App. 3d 327, 332 (1992).

Our supreme court examined, explained, and applied the relation-back doctrine in *Zeh*, 111 Ill. 2d 266. *Zeh* involved plaintiff's attempt to amend her complaint to change the address of the location where she was allegedly injured. *Zeh*, 111 Ill. 2d at 269. In affirming the dismissal, the supreme court traced the history of section 2—616, noting that the section no longer required that the original and amended pleadings state the same cause of action. *Zeh*, 111 Ill. 2d at 272-73. The court explained that the legislature's reason for this change was its belief that defendants would not be prejudiced by the addition of claims so long as they were given the facts that form the basis of the claim asserted against them prior to the end of the limitations period. *Zeh*, 111 Ill. 2d at 273. This emphasis on the identity of the occurrence rather than the identity of the cause of action still provides protection to defendants because, as long as they are aware of the occurrence or transaction that is the basis of the claim, they can be prepared to defend against that claim, whatever theory is advanced. *Zeh*, 111 Ill. 2d at 279. Thus, the critical inquiry is:

> " 'whether there is enough in the original description to indicate that plaintiff is not attempting to slip in an entirely distinct claim in violation of the spirit of the limitations act.' " *Simmons v. Hendricks*, 32 Ill. 2d 489, 497 (1965), quoting O. McCaskill, Illinois Civil Practice Act Ann., at 126, 127 (Supp. 1936).

In *Zeh*, the court explained that, because maintaining a stairway at one location involved different conduct by different persons at a different time and a different place from maintaining a stairway at another location, changing the address would involve two different locations (occurrences) and could not relate back to the original pleading.

*Zeh*, 111 Ill. 2d at 275. However, simply changing a word in an address from "street" to "place" would relate back because it constituted two different descriptions of the same occurrence or locality. *Zeh*, 111 Ill. 2d at 276-77.

For their assertion that these four counts of the third amended complaint relate back, the plaintiffs rely on *Marek*, where the difference between the original and amended pleadings was that the original complaint named only the doctor-agent while the second amended complaint charged both the doctor-agent and the facility-principal separately with negligently failing to notify her of the results of her mammography. *Marek*, 319 Ill. App. 3d at 698-99. The court allowed the amendment adding the cause of action against the facility-principal because the facility-principal could not claim surprise or prejudice since identical allegations had been made against its agent in the original complaint. *Marek*, 319 Ill. App. 3d at 699. The court reasoned that the heart of the plaintiff's complaint had been the allegations against the doctor-agent and that the facility-principal had been made aware of them when the original complaint was filed. *Marek*, 319 Ill. App. 3d at 699. Thus, the plaintiff was allowed to allege direct liability against the principal for acts that had previously been alleged only as the acts of the agent.

Defendants rely on the case of *Weidner v. Carle Foundation Hospital*, 159 Ill. App. 3d 710 (1987). However, the amended counts in *Weidner* sought to add a count of direct liability against the principal for violation of its duty to be aware of the qualifications of its employees and the level of their performance. *Weidner*, 159 Ill. App. 3d at 711. This duty is different from that alleged in the original complaint, which alleged vicarious liability for the acts of the physician. *Weidner*, 159 Ill. App. 3d at 711. In the case before us, no new theory of recovery is being alleged in the amended counts, as each of the previous complaints and amended counts alleges defendants' vicarious liability arising from the treatment Avakian received on May 21, 1996, at defendants' facility.

Defendants' other cases are similarly distinguishable. *Viirre v. Zayre Stores, Inc.*, 212 Ill. App. 3d 505, 516 (1991), involved the addition of a party to a lawsuit. The addition of a party requires a different analysis under the statute than amending a claim (735 ILCS 5/2—616(d) (West 2000)), and plaintiffs do not seek to add Kachigian as a party. The plaintiff in *Nickels v. Reid*, 277 Ill. App. 3d 849 (1996), sought to add the driver of the vehicle as a defendant and add negligent maintenance and vicarious liability as additional counts. *Nickels*, 277 Ill. App. 3d at 854. We note that the specific acts of negligently maintaining a vehicle are different from those of

negligently driving a vehicle and would provide no notice to a defendant of the acts upon which liability was based. See *Zeh*, 111 Ill. 2d at 275, 277. In *Flynn v. Szwed*, 224 Ill. App. 3d 107 (1991), the plaintiff attempted to amend her complaint to allege negligent treatment during years previous to those alleged in the original complaint. *Flynn*, 224 Ill. App. 3d at 112. Thus, while the general act of "treatment" remained the same, the specific acts of that treatment were not the same and could provide no notice to defendant. Finally, *Kennedy v. King*, 252 Ill. App. 3d 52 (1993), held that an amended complaint that alleged vicarious liability and negligent entrustment did not relate back to the original theory of negligent operation of an automobile. *Kennedy*, 252 Ill. App. 3d at 57. Hence, the decision to allow another to drive one's vehicle is a different act from negligently driving a vehicle oneself. Each of these cases involves an original complaint based upon one set of facts and an amended complaint based upon a new set of facts.

The defendants' assertions notwithstanding, the issue before us is not the addition of a party to this lawsuit, the addition of a new cause of action, or the addition of claims of negligent medical treatment that predate those already alleged in the original complaint. Rather, the issue before us is whether defendants' liability is changed by the alternative identity of the treating physician. We find that it is not.

We find the case of *Cammon v. West Suburban Hospital Medical Center*, 301 Ill. App. 3d 939 (1998), particularly helpful because the court held that some claims related back to the original complaint, while others did not. *Cammon*, 301 Ill. App. 3d at 947-48. In *Cammon*, plaintiff appealed the dismissal of three counts of her complaint against the facility-principal. *Cammon*, 301 Ill. App. 3d at 941. The counts directed against the facility-principal in plaintiff's original complaint alleged vicarious liability based upon a reading of decedent's medical scans by three radiologist-agents. *Cammon*, 301 Ill. App. 3d at 942. An additional count, directed at a doctor-agent, alleged negligence for failing to achieve adequate hemostasis following decedent's surgery. *Cammon*, 301 Ill. App. 3d at 942. After voluntarily dismissing the counts against the radiologists, plaintiff amended her complaint, adding three new counts against the hospital that were based upon the actions of unnamed nurses and other personnel for failing to achieve adequate hemostasis following surgery and for negligence in the administration of a drug known as Dilaudid. *Cammon*, 301 Ill. App. 3d at 943. The hospital filed a section 2—619 motion to dismiss, alleging that the three counts were time-barred by the statute of repose, and the trial court granted the hospital's motion. *Cammon*, 301 Ill. App. 3d at 943.

On appeal, the hospital argued that it had not been supplied with the necessary information to defend itself against the new claims for the treatment rendered by the different agents, since the claims asserted against it in the original complaint were based solely on the acts of the three radiologists. *Cammon*, 301 Ill. App. 3d at 945. Therefore, the hospital asserted, the new counts in the amended complaint did not arise out of the same transaction or occurrence. *Cammon*, 301 Ill. App. 3d at 945. The court agreed that the allegations involving the Dilaudid did not relate back because none of the previous complaints contained anything to indicate that plaintiff was asserting liability based upon the administration of medication. *Cammon*, 301 Ill. App. 3d at 947. However, the court found that the allegations concerning a failure to achieve adequate hemostasis did relate back because the original complaint had charged the doctor with failing to achieve adequate hemostasis following the procedure. *Cammon*, 301 Ill. App. 3d at 947. The court held that this constituted sufficient notice to the hospital that plaintiff was alleging a failure to achieve satisfactory hemostasis as a cause of death. *Cammon*, 301 Ill. App. 3d at 947.

There is a distinction that we find instructive between those claims held to relate back and those that did not in *Cammon*. Those claims that related back sought only to change the identity of the actor from agent to principal, while those claims that did not relate back attempted to change *both* the identity of the actor and the acts that allegedly gave rise to the facility's liability. See *Cammon*, 301 Ill. App. 3d at 947-48.

In counts XIV, XV, XVI, and XVII of the third amended complaint, plaintiffs seek to hold defendants vicariously liable for damages resulting from the treatment rendered by Kachigian, their alleged agent. Each of the three previous complaints alleged a cause of action for negligence predicated upon an agency relationship. The third amended complaint adds two additional counts predicated upon the alternative agency theory of apparent authority. However, we note that both the two counts of the earlier complaints and the four new counts of the third amended complaint are based upon agency, albeit slightly different, and the theory remains the vicarious liability of defendants for another's acts, which has not changed from the original complaint.

■ We find it important to emphasize that the specific acts giving rise to defendants' alleged liability remain the same. The original complaint alleged that defendants' agent Chulengarian prescribed a treatment and failed to warn of its adverse effects. The first and second amended complaints, the timeliness of which defendants do not question, specifically alleged that Chulengarian's prescribing Diflucan

caused plaintiffs' injuries. Therefore, defendants have received adequate notice that plaintiff was alleging damages as a result of the prescription. See *Cammon*, 301 Ill. App. 3d at 947. Thus, the only critical difference between the first amended and third amended pleadings is the identity of the agent. We do not think such a change is sufficient to prevent the allowance of plaintiffs' amendment.

In *Steinberg v. Dunseth*, 276 Ill. App. 3d 1038 (1995), it was held that, when the original complaint incorrectly named the anesthesiologist, the plaintiff was able to amend the complaint in order to name the true anesthesiologist, where plaintiff's theory had, from the beginning, faulted the performance of the anesthesiologist, "whoever that person might have been" (*Steinberg*, 276 Ill. App. 3d at 1043). We also note that our supreme court in *Downing v. Chicago Transit Authority*, 162 Ill. 2d 70 (1994), had little difficulty with allowing a plaintiff to proceed on a claim of vicarious liability after amending his complaint to name the agent, where the original complaint merely referred to him as "unknown employee and agent," despite the dismissal of the claim against the agent as beyond the time limitation. See *Downing*, 162 Ill. 2d at 77.

Defendants also assert that Chulengarian's deposition testimony put plaintiffs on notice that he did not treat Avakian and plaintiffs were therefore obligated to seek the true identity of the physician. See *Nickels v. Reid*, 277 Ill. App. 3d 849, 857 (1996). However, as noted, *Nickels* involved the addition of a party, as well as a new cause of action (*Nickels*, 277 Ill. App. 3d at 854), and the relation-back doctrine is predicated upon a defendant's awareness of the occurrence or transaction that is the basis for the claim (see *Zeh*, 111 Ill. 2d at 279), and not upon what diligence a plaintiff exerts. In fact, if a defendant is aware of the true facts prior to the expiration of the limitations period, the complaint may be amended to reflect these known facts. *Wolf v. Meister-Neiberg, Inc.*, 143 Ill. 2d 44, 47-48 (1991) (holding that plaintiff's amended complaint changing the address of the construction site where plaintiff was injured related back because both defendants had notice of the correct location prior to the expiration of the limitations period); see also *Zeh*, 111 Ill. 2d at 280-81, citing with approval *Harastej v. Reliable Car Rental, Inc.*, 58 F.R.D. 197 (D.P.R. 1972) (where a change in address was allowed because the defendant's identity did not change and the defendant had been aware that the accident had occurred on its property).

While defendants protest that they did not have notice of the claim against them for the acts or omissions of Kachigian, it is their own theory that Kachigian was the treating physician and not Chulengarian. Defendants were in possession of Avakian's treatment records

and could determine from the start who the treating physician was. Since it is they who adamantly assert the treating physician was Kachigian, they cannot be said to lack notice of the claim against them for the care Kachigian gave to Avakian.

Pfizer argues that it would be prejudiced by the reversal of the trial court's order dismissing counts XIV through XVII of the third amended complaint because it will be unable to file a contribution action against Kachigian due to the expiration of the repose period. While we make no comment regarding the likelihood of success Pfizer may have in bringing a contribution action against Kachigian or what further action it may pursue in this case, we note that Pfizer has failed to provide any explanation or authority as to why our holding that these four counts relate back to the original complaint precludes its ability to file a contribution action.

## B. Section 2—622 Report

Defendants also asserted in their motion to dismiss that plaintiffs' health professional's report, which must be filed along with the complaint pursuant to section 2—622 of the Code (735 ILCS 5/2—622 (West 1994)), failed to meet the requirements of that section and therefore dismissal was proper. The order granting defendants' motion does not specify on what basis the trial court granted defendants' motion to dismiss, but the transcript of the hearing suggests that the trial court granted the dismissal on this basis as well.

■ Section 2—622 requires plaintiffs who seek damages for injuries resulting from healing art malpractice to file an affidavit along with the complaint. 735 ILCS 5/2—622(a)(1) (West 1994). This affidavit must establish that the affiant has consulted a health professional who has determined, upon a review of the medical record, that there is a reasonable and meritorious cause for filing the action. 735 ILCS 5/2—622(a)(1) (West 1994). The report of the reviewing health professional must also be attached to the complaint. 735 ILCS 5/2—622(a)(1) (West 1994).

The purpose of section 2—622 is to deter frivolous suits. *Cato v. Attar*, 210 Ill. App. 3d 996, 998 (1991). While examining issues surrounding section 2—622, we must keep in mind the liberality with which amendments to medical malpractice pleadings are to be allowed. *Cato*, 210 Ill. App. 3d at 999.

■ Defendants assert that our standard of review on this issue is an abuse of discretion, citing *Premo v. Falcone*, 197 Ill. App. 3d 625 (1990). *Premo* addressed whether the dismissal of the plaintiff's complaint with prejudice was proper. *Premo*, 197 Ill. App. 3d at 629. We appropriately applied the abuse of discretion standard in that case.

*Premo*, 197 Ill. App. 3d at 630. However, prior to determining whether or not a complaint warrants dismissal with prejudice, a court must determine whether the physician's report complies with section 2—622 of the Code, as this is the basis for dismissal under section 2—619 (735 ILCS 5/2—619 (West 2000); 735 ILCS 5/2—622(g) (West 1994)). We review dismissals under section 2—619 *de novo. Mueller v. North Suburban Clinic, Ltd.*, 299 Ill. App. 3d 568, 572 (1998). Accordingly, we review *de novo* the issue of whether a physician's report complies with section 2—622. *Mueller*, 299 Ill. App. 3d at 572. Defendants' sole assertion is that the section 2—622 report is inadequate because it speaks of treatment rendered by Chulengarian, rather than Kachigian, and therefore it cannot support the four new counts. We disagree.

■ The statute requires that, for each defendant who has been named in a complaint and each named at a later time, there must be a separate certificate and written report. 735 ILCS 5/2—622(b) (West 1994). However, this court has recognized that, when a single report is sufficiently broad to cover each defendant and discusses deficiencies in the medical care given by the defendants, the report can apply to more than one defendant and comply with section 2—622. *Premo v. Falcone*, 197 Ill. App. 3d at 632. Furthermore, a report speaking to the acts of an agent is sufficient to support a count against the principal, even though the principal is not specifically named in the report. *Comfort v. Wheaton Family Practice*, 229 Ill. App. 3d 828, 833 (1992).

■ The requirement that the report clearly identify the reasons that a meritorious cause exists further supports our holding in *Comfort*. The identity of the treating physician means little to the health professional who reviews a patient's medical record in order to assess the standard of care received by that patient. This is so because the expertise of the health professional lends itself to a review of the acts performed by the treating physician, not to a review of his or her identity. The reviewing physician must state with precision that the acts fell below the standard of care and why. Thus, it is the actions of the treating physician that give rise to liability. Accordingly, the theory of section 2—622 does not require a separate report for the addition of a party whose liability is not based upon different acts or omissions. See *Premo*, 197 Ill. App. 3d at 632 (multiple defendants whose acts giving rise to liability were the same).

Defendants' assertion would require plaintiffs to incur the cost of another physician's report, which merely substitutes the name Kachigian for Chulengarian. There would be no additional review of the treatment because the treatment itself would remain unchanged. We do not see how justice would be served by requiring plaintiffs to incur the cost of a physician's expertise where such expertise is not utilized.

The amended pleading before us changes only the identity of the agent, not the actions that give rise to defendants' liability. The theory of liability asserted against defendants is that in their capacity as principals or employers they are responsible for the acts of their agent. In two of the four new counts, the cause of action remains one of agency, and in the remaining two, largely the same facts will be utilized to establish apparent authority. Moreover, the identity of the defendants and the acts giving rise to their liability have not changed from the first amended complaint to the third amended complaint. Therefore, under these facts, we hold that, when the counts are directed against a principal, and the acts upon which liability is predicated remain the same, plaintiff does not need to change the section 2—622 report to correct the agent's identity.

Because we hold that the amended counts relate back to an originally timely filed complaint and that plaintiffs' section 2—622 physician's report is sufficient to support the amended complaint, we need not address plaintiffs' remaining argument that the trial court erred by denying their motion for reconsideration.

## III. CONCLUSION

For the foregoing reasons, we reverse the trial court's order granting defendants' motion to dismiss counts XIV, XV, XVI, and XVII of the third amended complaint, and we remand the cause for proceedings consistent herewith.

Reversed and remanded.

McLAREN and BYRNE, JJ., concur.