NO. 4-06-0406      Filed 1/30/07

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

| | | |
|---|---|---|
| LARRY W. PORTER, JR., | ) | Appeal from |
|     Plaintiff-Appellant, | ) | Circuit Court of |
|     v. | ) | Macon County |
| DECATUR MEMORIAL HOSPITAL and | ) | No. 02L49 |
| OLIVER N.R. DOLD, M.D., | ) | |
|     Defendants-Appellees. | ) | |
| | ) | Honorable |
| | ) | Katherine M. McCarthy, |
| | ) | Judge Presiding. |

_____

JUSTICE McCULLOUGH delivered the opinion of the court:

On June 21, 2004, plaintiff, Larry W. Porter, Jr., filed a motion seeking leave to file a second amended complaint against defendants Decatur Memorial Hospital (hospital) and Oliver N.R. Dold, M.D., alleging medical malpractice. Initially, the trial court allowed plaintiff's motion to amend but, later, it revised its ruling and denied the motion. Plaintiff appeals, arguing the court erred by refusing to allow him to file his second amended complaint solely because it did not "relate back" to his timely filed original and amended pleadings pursuant to section 2-616(b) of the Code of Civil Procedure (Code) (735 ILCS 5/2-616(b) (West 2002)). We affirm.

On March 25, 2002, plaintiff filed his original complaint in this matter. He alleged, on January 12, 2001, he sought treatment at the hospital's emergency room for injuries he

received in an automobile accident and was treated by Dr. Dold, who diagnosed plaintiff as having an incomplete spinal-cord injury. Plaintiff asserted Dr. Dold was negligent because he (1) ordered discontinuance of plaintiff's C collar and spine board prior to performing a magnetic resonance imaging (MRI); (2) discontinued spinal immobilization prior to fully appreciating plaintiff's spinal injury; (3) failed to obtain a timely MRI on January 12, 2001; and (4) failed to appreciate decreasing blood pressure and decreasing leg function as signs and symptoms of further spinal injury. Plaintiff alleged that, as a result of Dr. Dold's negligent acts or omissions, he sustained further spinal injury that caused him to lose function in his legs. Additionally, plaintiff named the hospital as a defendant in discovery.

On January 6, 2003, plaintiff filed a first amended complaint. He repeated his allegations against Dr. Dold and added a second count against the hospital. Plaintiff alleged that, as a result of the wrongful acts and omissions of the hospital, his diminishing neurological function went undiagnosed and untreated, causing him to lose extremity function. He asserted that Dr. Dold ordered neurological checks to be per-formed every hour. Further, plaintiff alleged that the hospital provided personnel, including nurses, aides, attendants, and others for the care and treatment of its patients and that the

hospital, through its employees and agents, breached its duty of care to plaintiff by failing to (1) perform thorough neurological checks every hour as ordered; (2) record complete spinal assessments as part of hourly neurological checks; (3) record extremity strength as part of hourly neurological checks on January 13, 2001, from 1 a.m. to 6 a.m.; and (4) report diminishing neurological status to the attending neurosurgeon.

On June 21, 2004, plaintiff filed a motion for leave to file a second amended complaint. His proposed second amended complaint added a third count, also against the hospital. Plaintiff alleged that he underwent a computerized tomography (CT) scan of the cervical spine that was read and interpreted by Dr. Gordon Cross, who plaintiff asserted was an apparent agent of the hospital. He further alleged the hospital, through its employees and agents, breached its duty of care, by (1) failing to (a) properly interpret the CT scan of his cervical spine and (b) failing to appreciate cervical fractures revealed on the CT scan of his cervical spine and (2) misreading and misinterpreting the CT scan of his cervical spine.

The hospital objected to plaintiff's motion. On August 10, 2004, the trial court allowed the motion and ordered plaintiff's second amended complaint placed on file as of that date. The court found the second amended complaint related back to the original and first amended complaints because it arose out of the

same transaction or occurrence as alleged in those timely filed pleadings pursuant to section 2-616(b) of the Code (735 ILCS 5/2-616(b) (West 2002)).

On August 27, 2004, the hospital filed a motion to dismiss count III of plaintiff's second amended complaint. On October 29, 2004, following a hearing, the trial court granted the hospital's motion to dismiss. It stated the allegations contained in count III did not relate back to the original counts plaintiff filed against the hospital. Specifically, the court found that the original complaints did not put the hospital "on notice or provide it with any information necessary to prepare its defense as to the conduct of Dr. Cross or any radiological issues." On November 11, 2004, the hospital filed a motion for a finding pursuant to Supreme Court Rule 304(a) (155 Ill. 2d R. 304(a)) that there was no just reason to delay enforcement or appeal of the court's dismissal of count III of the second amended complaint. Plaintiff objected to the hospital's motion and on November 15, 2004, he filed a motion to reconsider the dismissal of count III.

On November 11, 2005, following a hearing, the trial court revised its ruling on plaintiff's motion for leave to file the second amended complaint and denied that motion, finding count III of the complaint was untimely and did not relate back to the timely filed original and amended pleadings. The court

noted the inconsistency in its grant of plaintiff's motion to file a second amended complaint and its grant of defendant's motion to dismiss count III of that complaint. In rendering its decision, it stated as follows:

> "The [c]ourt previously identified the 'same transaction or occurrence' as the entire hospitalization of [plaintiff] which the [c]ourt now feels is too broad for purposes of the relation[-]back doctrine since there was absolutely no indication in the original pleadings or medical reports which would have apprised [the hospital] of these allegations of misconduct against Dr. Cross."

On May 3, 2006, the court entered a Rule 304(a) finding.

This appeal followed.

On appeal, plaintiff argues the trial court erred by denying his motion for leave to file a second amended complaint. Specifically, he contends his second amended complaint is not untimely because it relates back to his timely filed original and amended pleadings pursuant to section 2-616(b) of the Code (735 ILCS 5/2-616(b) (West 2002)).

Generally, amendments to pleadings should be liberally allowed to permit a party to fully present his or her cause of action. Grove v. Carle Foundation Hospital, 364 Ill. App. 3d

412, 417, 846 N.E.2d 153, 157-58 (2006).  In particular, medical-malpractice plaintiffs "are to be afforded every opportunity to establish a case, and amendments to the pleadings are to be liberally allowed to enable the action to be heard on the merits, rather than brought to an end because of procedural technicalities."  Grove, 364 Ill. App. 3d at 417, 846 N.E.2d at 158.

There is, however, no absolute right to amend a complaint (Grove, 364 Ill. App. 3d at 417, 846 N.E.2d at 158), and a court's decision whether to allow or deny an amendment is a matter of discretion that will not be reversed absent an abuse of discretion (Board of Directors of Bloomfield Club Recreation Ass'n v. Hoffman Group, Inc., 186 Ill. 2d 419, 432, 712 N.E.2d 330, 337 (1999)).  In determining whether an amendment should be allowed, a court considers whether (1) a defect in the pleading would be cured, (2) the opposing party would be surprised or prejudiced by the amendment, (3) the proposed amendment was timely filed, and (4) the moving party had previous opportunities to amend the complaint.  Grove, 364 Ill. App. 3d at 417-18, 846 N.E.2d at 158, citing Bloomfield Club, 186 Ill. 2d at 432, 712 N.E.2d at 337.

Initially, we note plaintiff argues the proper standard of review is de novo, not whether the trial court abused its discretion.  He contends "the instant appeal represents a special case" because the trial court initially granted his motion to

amend but then reconsidered and reversed that decision based upon a reinterpretation of the statute. He maintains that the interpretation of a statute is an issue of law subject to de novo review (People v. Collins, 214 Ill. 2d 206, 214, 824 N.E.2d 262, 266 (2005)) and, since that is what occurred in this case, it must follow that the de novo standard of review is the appropriate standard. Plaintiff further notes that if this appeal arose from a section 2-619 (735 ILCS 5/2-619 (West 2002)) motion to dismiss, the standard of review would also be de novo.

We disagree with plaintiff's contention that the appropriate standard of review is de novo. Although the trial court initially permitted plaintiff to file his second amended complaint, it reconsidered that decision and denied plaintiff's motion for leave to amend. That is the decision that is subject to review, and the appropriate standard of review in such instances is the abuse-of-discretion standard. Moreover, we do not find that this issue involves matters of statutory interpretation. Instead, it requires a close examination of the facts of this case and application of those facts to the requirements set forth in section 2-616(b).

Section 13-212(a) (735 ILCS 5/13-212(a) (West 2002)) of the Code provides that an action for damages against a physician or hospital for injury or death must be brought within two years after the date on which the plaintiff knew, should have known, or

received written notice of injury or death.  Further, "in no event shall such action be brought more than [four] years after the date on which occurred the act or omission or occurrence alleged in such action to have been the cause of such injury or death."  735 ILCS 5/13-212(a) (West 2002).

Nevertheless, a cause of action in an amended pleading shall not be barred by lapse of time and shall relate back to the date of the filing of the original pleading if (1) the original pleading was timely filed and (2) it appears from the original pleading that the cause of action asserted in the amended pleading grew out of the same transaction or occurrence set up in the original pleading.  735 ILCS 5/2-616(b) (West 2002).  Pursuant to section 2-616(b), an amended complaint does not have to state the same or substantially similar cause of action as the original; instead, an amended complaint will relate back to the original if it states a cause of action that grew out of the same transaction or occurrence.  Zeh v. Wheeler, 111 Ill. 2d 266, 272-73, 489 N.E.2d 1342, 1345 (1986).  "The 'original pleading' need not be the first complaint filed, but can be an amended pleading so long as it was also filed within the appropriate time period."  Avakian v. Chulengarian, 328 Ill. App. 3d 147, 153, 766 N.E.2d 283, 289 (2002).

"The rationale behind the same[-]transaction[-]or[-]occurrence rule is that a defendant will not be prejudiced by an

amendment so long as 'his attention was directed, within the time prescribed or limited, to the facts that form the basis of the claim asserted against him.' [Citation]." Boatmen's National Bank of Belleville v. Direct Lines, Inc., 167 Ill. 2d 88, 102, 656 N.E.2d 1101, 1107 (1995). "[T]he original complaint should supply a defendant with all of the information necessary to prepare its defense to the subsequently asserted claim." McArthur v. St. Mary's Hospital of Decatur, 307 Ill. App. 3d 329, 334, 717 N.E.2d 501, 505 (1999). Further, when applying the relation-back doctrine, a court may examine the entire record "to determine (1) if a defendant is on notice of a claim prior to the expiration of the statute of limitations and (2) the true facts upon which the amended claim against [the] defendant is based." McArthur, 307 Ill. App. 3d at 335, 717 N.E.2d at 505-06.

Here, the parties do not dispute that both the original complaint and the first amended complaint were filed within the time period set forth in the relevant statute of limitations. Therefore, the only question before this court is whether the second amended complaint grew out of the same transaction or occurrence as set forth in those timely filed original pleadings. In this instance, the first amended complaint is the relevant "original pleading" for relation-back purposes.

Illinois courts have had several opportunities to address section 2-616(b) and whether an untimely amended com-

plaint related back to the timely filed original and amended pleadings. Most recently, in Grove, 364 Ill. App. 3d at 422, 846 N.E.2d at 161, a divided panel of this court held that a proposed amendment did not relate back to the original complaint. There, the plaintiff underwent a routine colonoscopy that resulted in complications, necessitating emergency surgery. Grove, 364 Ill. App. 3d at 414, 846 N.E.2d at 155. Following his emergency surgery, the plaintiff developed a postoperative wound infection. Grove, 364 Ill. App. 3d at 414, 846 N.E.2d at 155.

The plaintiff's original complaint alleged negligence against the doctors who performed the emergency surgery and treated the plaintiff's infection and against the hospital for those doctors' actions under the theory of respondeat superior. Grove, 364 Ill. App. 3d at 414, 846 N.E.2d at 155. After the relevant statute-of-limitations term had expired, the plaintiff filed a motion to amend his complaint, adding elements of negligence based on the conduct of the doctor who performed the colonoscopy. Grove, 364 Ill. App. 3d at 414-15, 846 N.E.2d at 155-56. That doctor was not one of the doctors who performed the emergency surgery or treated the plaintiff's infection, and the plaintiff did not seek to add him as a defendant in the amended complaint. Grove, 364 Ill. App. 3d at 414, 846 N.E.2d at 155. In finding that the new allegations in the amended complaint did not grow out of the same transaction or occurrence as those

alleged in the original pleading, we noted that the amendment sought to add a completely distinct procedure to the plaintiff's complaint and that "two separate and distinct surgical procedures [were] at issue." Grove, 364 Ill. App. 3d at 420, 846 N.E.2d at 160.

In McArthur, 307 Ill. App. 3d at 331, 717 N.E.2d at 502-03, the plaintiff brought suit against a hospital and several other defendants after her baby developed hydrocephalus in utero, the condition went undiagnosed, and the baby died during delivery. The plaintiff's sole allegation against the hospital in each of her timely filed pleadings was that it "'[f]ailed to implement and/or enforce a policy requiring a permanent radiographic image of all ultrasound sonogram examinations be maintained.'" McArthur, 307 Ill. App. 3d at 331, 717 N.E.2d at 503. After the relevant statute-of-limitations term had expired, the plaintiff moved for leave to file an amended complaint adding several new allegations against the hospital, including allegations that there had been a failure to properly read and/or interpret sonograms and flat plate X-rays. McArthur, 307 Ill. App. 3d at 332, 717 N.E.2d at 503.

This court determined that the allegations in the plaintiff's untimely amended complaint were "at the heart of [her] case from the beginning." McArthur, 307 Ill. App. 3d at 335, 717 N.E.2d at 505. Additionally, we noted that, although

the plaintiff failed to raise those allegations against the hospital, she had raised them against the hospital's codefendants. McArthur, 307 Ill. App. 3d at 335, 717 N.E.2d at 505. For those reasons, we determined that the hospital was neither prejudiced nor unfairly surprised by the allegations in the untimely amended complaint and that it related back to the plaintiff's timely filed original pleadings. McArthur, 307 Ill. App. 3d at 336, 717 N.E.2d at 506.

Further, in Yette v. Casey's General Stores, Inc., 263 Ill. App. 3d 422, 422-23, 635 N.E.2d 1091, 1091 (1994), the plaintiff brought suit against the defendant after he fell on an icy sidewalk adjacent to the defendant's building and was injured. The plaintiff alleged the defendant negligently failed to salt or remove ice from the sidewalk. Yette, 263 Ill. App. 3d at 423, 635 N.E.2d at 1091-92. After the relevant statute of limitations had run, the plaintiff filed an amended complaint adding a new allegation that the building's design resulted in the unnatural accumulation of ice on the sidewalk. Yette, 263 Ill. App. 3d at 423, 635 N.E.2d at 1092. This court declined to find that the amended complaint related back to the original and stated that the amended pleading was "based on conduct or conditions different from those alleged in the original complaint and for which [the] defendant had no notice." Yette, 263 Ill. App. 3d at 426, 635 N.E.2d at 1094. Specifically, we noted that

"[t]he original complaint did not apprise [the] defendant prior to the running of the statute that the condition of its building was a material element of [the] plaintiff's claim." Yette, 263 Ill. App. 3d at 426, 635 N.E.2d at 1094.

In support of his argument, plaintiff cites Figueroa v. Illinois Masonic Medical Center, 288 Ill. App. 3d 921, 923, 681 N.E.2d 64, 65 (1997), where the plaintiff filed her original complaint, alleging the defendants acted negligently in treating her following the delivery of the plaintiff's child by caesarean section. However, the plaintiff's untimely filed complaint alleged negligence during the plaintiff's labor and prior to the delivery of her child. Figueroa, 288 Ill. App. 3d at 923, 681 N.E.2d at 65. The First District determined that the untimely pleadings related back to the original complaint because, although the original complaint focused solely on the defendants' conduct following the delivery, the relevant transaction or occurrence had to "be defined as the period of labor immediately preceding delivery as well as the post[]partum care received in the hospital." Figueroa, 288 Ill. App. 3d at 925, 681 N.E.2d at 66. The court noted that "labor, delivery, and post[]partum care are *** a progression of the various stages of the birthing process" and that they "frequently occur in a very compressed time frame and, accordingly, must be treated as a single event." Figueroa, 288 Ill. App. 3d at 925, 681 N.E.2d at 67.

Although plaintiff relies heavily on Figueroa, we find Cammon v. West Suburban Hopsital Medical Center, 301 Ill. App. 3d 939, 704 N.E.2d 731 (1998), more instructive given the facts of this particular case. In that case, the plaintiff filed an original complaint against a hospital and several doctors. Cammon, 301 Ill. App. 3d at 942, 704 N.E.2d at 734. A count directed against one of the doctors alleged his failure to achieve adequate hemostasis following an exploratory laparotomy, and the counts directed against the other doctors alleged they negligently misinterpreted CT scans. Cammon, 301 Ill. App. 3d at 942, 704 N.E.2d at 734. Additionally, the only counts against the hospital alleged that it was vicariously liable for the doctors' conduct in negligently misinterpreting the CT scans. Cammon, 301 Ill. App. 3d at 942, 704 N.E.2d at 734.

With leave of the trial court, the plaintiff filed an amended complaint adding allegations against the hospital based on its alleged vicarious liability for the acts and omissions of unnamed nurses and other personnel for (1) failing to achieve adequate hemostasis following the exploratory laparotomy, (2) failing to properly monitor the plaintiff's decedent during and following the exploratory laparotomy to adequately assess his condition and his respiratory status, and (3) negligently administering the drug Dilaudid. Cammon, 301 Ill. App. 3d at 943, 704 N.E.2d at 734. The hospital filed a motion to dismiss the

- 14 -

additional counts, alleging they were time barred, and the trial court granted its motion. Cammon, 301 Ill. App. 3d at 943, 704 N.E.2d at 734-35.

In reaching its decision, the First District noted that the plaintiff's position was "that the transaction or occurrence set out in her original complaint encompasse[d] the entire course of treatment rendered to [the decedent] from his admission to [the hospital] until his death." Cammon, 301 Ill. App. 3d at 944, 704 N.E.2d at 735. Conversely, the hospital's position was that the transaction or occurrence set forth in the plaintiff's original complaint was the decedent's preoperative radiological care because the claims asserted against it in the original complaint were premised solely on the acts of radiologists in misreading the decedent's CT scans. Cammon, 301 Ill. App. 3d at 945, 704 N.E.2d at 735-36. The court found the hospital's analysis too restrictive and the plaintiff's analysis too encompassing. Cammon, 301 Ill. App. 3d at 945, 704 N.E.2d at 736.

In determining whether to apply the relation-back doctrine, the court found that the hospital was not placed on notice that the plaintiff was claiming that the effects of Dilaudid upon the decedent or a failure to monitor his respiratory status in any way contributed to his injury or death. Cammon, 301 Ill. App. 3d at 947, 704 N.E.2d at 737. The court stated it found no suggestion of such claims in either the

- 15 -

original complaint or the record.  Cammon, 301 Ill. App. 3d at 947, 704 N.E.2d at 737.

However, the court pointed out that the plaintiff alleged negligence for failing to achieve adequate hemostasis following the exploratory laparotomy in the original complaint against one of the hospital's codefendants.  Cammon, 301 Ill. App. 3d at 947, 704 N.E.2d at 737.  Further, pertinent information regarding that alleged failure was also contained in the health-care-professional's report that was attached to the original complaint.  Cammon, 301 Ill. App. 3d at 947, 704 N.E.2d at 737.  Thus, the court determined that only the allegation in the amended complaint concerning the failure to achieve adequate hemostasis related back to the original complaint.  Cammon, 301 Ill. App. 3d at 948, 704 N.E.2d at 737.

As in Cammon, plaintiff here defines the same transaction or occurrence set forth in its timely filed pleadings as "the entire course of events from the time the plaintiff was admitted into the hospital until the injury for which he has brought suit occurred."  Like the court in Cammon, we find plaintiff's position to be overly broad for section 2-616(b) purposes.  Although all of plaintiff's claims stemmed from his hospitalization following his automobile accident and his resultant condition of incomplete quadriplegia, the new allegations in his second amended complaint did not grow out of the same trans-

- 16 -

action or occurrence as those alleged in his timely filed first amended complaint.

Specifically, the first amended complaint did not provide the hospital with notice of the facts underlying plaintiff's later claim that Dr. Cross had improperly interpreted a CT scan of plaintiff's cervical spine. Neither the allegation that the CT scan had been misinterpreted nor references to Dr. Cross can be found in the first amended complaint. Further, no similar claims were raised against Dr. Dold, the hospital's codefendant, in either the original or first amended complaint as was the case in both McArthur and Cammon. Additionally, although medical reports attached to the original and first amended complaints generally reference that a CT scan had been performed, those reports contain no additional information that would put the hospital on notice of plaintiff's later claim of negligence as a result of Dr. Cross's reading of those CT scans.

Plaintiff also contends the hospital was put on notice of its claims concerning Dr. Cross and the misreading of the CT scan from the deposition of Dr. Marie Long, a physician who treated plaintiff during the relevant time period and whose deposition was taken before the statute of limitations had run. In her deposition, Dr. Long stated she reviewed the results of all of plaintiff's spine films, including the CT scan of his cervical spine, which was normal. Her testimony was not suffi-

cient to put the hospital on notice of plaintiff's later claims that Dr. Cross misread or misinterpreted the CT scan.

Here, the trial court did not abuse its discretion in finding that the hospital's attention was not directed, within the relevant statutory time period, to the facts that formed the basis of the claim against it in plaintiff's second amended complaint. The claims alleged against the hospital in that untimely pleading did not grow out of the same transaction or occurrence as set forth in the first amended complaint, and the relation-back doctrine does not apply.

For the reasons stated, we affirm the trial court's judgment.

Affirmed.

APPLETON, J., concurs.

MYERSCOUGH, J., dissents.

JUSTICE MYERSCOUGH, dissenting:

Because I believe the appropriate standard of review is de novo and that the amended complaint does relate back to the two timely filed complaints, I respectfully dissent.

A. Standard of Review

The majority correctly notes that the standard of review of an order denying leave to amend is abuse of discretion. City of Champaign v. Sides, 349 Ill. App. 3d 293, 304, 810 N.E.2d 287, 297 (2004). However, whether an amended complaint relates back to the original timely filed complaint should be reviewed de novo.

In Clemons v. Mechanical Devices Co., 202 Ill. 2d 344, 781 N.E.2d 1072 (2002), the supreme court applied two standards of review when examining the trial court's decision on a motion

- 19 -

to amend pleadings.  Clemons, 202 Ill. 2d at 351-52, 781 N.E.2d at 1078 (reviewing de novo whether the mandate required the trial court to allow the amendment and reviewing for an abuse of discretion the court's denial of the amendment).  The Clemons court stated:

> "A trial court has discretion in deciding a motion to amend pleadings, and a reviewing court will not reverse the trial court's decision absent abuse of that discretion.  [Citations.]  However, a trial court must exercise its discretion within the bounds of the law.  [Citations.]  After a remand, the trial court is required to exercise its discretion within the bounds of the remand.  Whether it has done so is a question of law.  [Citations.]  A reviewing court determines a legal question independently of the trial court's judgment. [Citations.]"  Clemons, 202 Ill. 2d at 351-52, 781 N.E.2d at 1078.

I respectfully suggest that whether an amended complaint relates back is a legal question that is reviewed independently of the trial court's discretion.

Such an approach makes sense.  Illinois courts apply a

de novo standard of review when the trial court's decision was based on an assessment of the pleadings, not the credibility of witnesses, and the trial court was in no better position than the reviewing court to decide the merits of the motion. See People v. Pursley, 341 Ill. App. 3d 230, 234, 792 N.E.2d 378, 381-82 (2003) (involving section 116-3 of the Code of Criminal Procedure of 1963 (725 ILCS 5/116-3(West 2000))). That is the case here. This court can as easily examine the pleadings at issue as well as the trial court.

Further, the finding that a cause of action does not relate back is essentially a finding that the action is barred by the statute of limitations. The determination that a cause of action is barred by the statute of limitations is reviewed de novo. Carlen v. First State Bank of Beecher City, 367 Ill. App. 3d 1051, 1055-56, 857 N.E.2d 696, 700 (2006). In fact, in any other posture, our review of relation back under section 2-616 would be de novo. Marek v. O.B. Gyne Specialists II, S.C., 319 Ill. App. 3d 690, 694-95, 746 N.E.2d 1, 5 (2001) (reviewing de novo whether the trial court properly dismissed the amended complaint as time-barred for failing to relate back to the original complaint); McArthur, 307 Ill. App. 3d at 333, 717 N.E.2d at 504 (reviewing de novo whether the trial court properly granted summary judgment on the basis that the amended complaint did not relate back to the timely filed original complaint).

- 21 -

De novo review of relation back is also used by several federal circuit courts.  See Slayton v. American Express Co., 460 F.3d 215, 226 (2d Cir. 2006); Miller v. American Heavy Lift Shipping, 231 F.3d 242, 247 (6th Cir. 2000); Percy v. San Francisco General Hospital, 841 F.2d 975, 978 (9th Cir. 1988).  Federal Rule of Civil Procedure 15(c)(2) is similar to section 2-616(b) of the Code, providing as follows:

> "An amendment of a pleading relates back to the date of the original pleading when
>
>     ***
>
> (2) the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading."  Fed. R. Civ. P. 15(c)(2).

While the standard of review for determining relation back in the federal courts is not uniform, the Second, Sixth, and Ninth Circuits have held the appropriate standard of review is de novo.  The reasoning in these cases is instructive.

In Slayton, 460 F.3d at 226, the Second Circuit examined the appropriate standard of review of district-court decisions under Rule 15(c)(2).  The court noted that while the standard of review for denials of leave to amend is for an abuse of discretion, that standard of review makes sense because

- 22 -

whether to allow leave to amend requires the application of the district court's discretion. <u>Slayton</u>, 460 F.3d at 226, 227. In contrast, the court found a determination under Rule 15(c)(2) that relation back required no discretion and review should be <u>de novo</u>. <u>Slayton</u>, 460 F.3d at 227. In fact, the <u>Slayton</u> court noted a reviewing court is in as good a position to determine whether the facts in the amended complaint arose out of conduct alleged in the original complaint as is the district court. <u>Slayton</u>, 460 F.3d at 227; see also <u>Miller</u>, 231 F.3d at 247 (holding that the determination of whether a claim in the amended complaint arose out of the same transaction or occurrence contained in the original pleading requires application of the legal standard contained in Rule 15(c)(2), a task the appellate court is as equipped to perform as the district court); <u>Percy</u>, 841 F.2d at 978 (appellate court reviews <u>de novo</u> whether the relation-back doctrine of Rule 15(c) should be applied when an amendment seeks to add a claim against an existing party; the appellate court is in as good a position as the district court to "decide whether the 'conduct, transaction, or occurrence' test of the Rule has been met").

For these reasons, I would review <u>de novo</u> whether the second amended complaint relates back to the timely filed complaints.

B. Relation Back

- 23 -

Section 2-616(b) of the Code provides, in relevant part, as follows:

"The cause of action *** set up in any amended pleading shall not be barred by lapse of time under any statute or contract prescribing or limiting the time within which an action may be brought or right asserted, if the time prescribed or limited had not expired when the original pleading was filed, and if it shall appear from the original and amended pleadings that the cause of action asserted *** grew out of the same transaction or occurrence set up in the original pleading, even though the original pleading was defective in that it failed to allege the performance of some act or the existence of some fact or some other matter which is a necessary condition precedent to the right of recovery *** asserted, if the condition precedent has in fact been performed, and for the purpose of preserving the cause of action *** and for that purpose only, an amendment to any pleading shall be held to relate back to the date of the filing of the original

pleading so amended."  735 ILCS 5/2-616(b)

(West 2004).

Section 2-616(b) is remedial in nature and should be liberally construed.  Bryson v. News America Publications, Inc., 174 Ill. 2d 77, 106, 672 N.E.2d 1207, 1223 (1996) (finding that the false-light claim related back to the timely filed defamation claim based on the same transaction or occurrence).

Pleadings may be amended at any time, even after judgment.  735 ILCS 5/2-616(c) (West 2004).  Under certain circumstances, new claims may even be asserted against new defendants after the statute of limitations has run.  735 ILCS 5/2-616(d) (West 2004).  "Pleadings shall be liberally construed with a view to doing substantial justice between the parties." 735 ILCS 5/2-603(c) (West 2004).

Plaintiff's original complaint alleged he arrived at the hospital on January 12, 2001.  Plaintiff alleged Dr. Dold was negligent in the following ways:

"a. Ordered discontinuance of the

patient's C collar and spine board

prior to performance of an MRI scan;

b. Discontinued spinal immobiliza-

tion prior to fully appreciating the

patient's spinal injury;

- 25 -

> c. Failed to obtain a timely MRI
>
> scan on January 12, 2001;
>
> d. Failed to appreciate decreasing
>
> blood pressure and decreasing leg
>
> function as signs and symptoms of fur-
>
> ther spinal injury."

A section 2-622 (735 ILCS 5/2-622 (West 2004)) certificate prepared by James N. Campbell, M.D., noted the evaluation performed by Dr. Dold. The evaluation included reviewing "CT scanning and plain film [X]-rays." Dr. Campbell concluded that some of Dr. Dold's actions--the actions identified in the complaint--deviated from the standard of care because Dr. Dold failed to appreciate the extent of plaintiff's injuries.

Plaintiff's timely filed first amended complaint contained the same allegations of negligence against Dr. Dold. The complaint added a cause of action against the hospital through its employees and agents. The first amended complaint alleged that on January 12, 2001, Dr. Dold ordered neurological checks for plaintiff to be performed every hour by the hospi-

tal personnel.  Plaintiff alleged the hospital, through its employees and agents, breached its duty of care in the following ways:

"(a) Failed to perform thorough neuro checks every hour as ordered;

(b) Failed to record complete spinal assessments as part of hourly neuro checks;

(c) Failed to record extremity strength as part of hourly neuro checks on January 3, 2001[,] from 1:00 A.M. to 6:00 A.M.;

(d) Failed to report diminishing neurological status to the attending neurosurgeon."

Plaintiff further alleged that, as a direct result of the hospital's wrongful acts or omissions, plaintiff's diminishing neurological function went undiagnosed and untreated.

Plaintiff attached to the first amended complaint a section 2-622 (735 ILCS 5/2-622 (West 2004)) certificate completed by Leon Sykes, M.D.  This certificate also noted the CT scanning that occurred on January 12, 2001.  In particular, Dr.

Sykes noted that the "C-spine [X]-ray revealed a small bony density off the anterior inferior aspect of C5, which raised the possibility of an avulsion fracture." However, Dr. Sykes did not include any statement that the hospital, through its agents or employees, failed to properly interpret the CT scans.

The second amended complaint at issue herein added an additional allegation of negligence against Dr. Dold--that he "[f]ailed to recognize a fracture of the cervical spine on the CT scan performed January 12, 2001." That allegation is not at issue in this appeal. The second amended complaint also added a second count against the hospital. Count III alleged that, while a patient at the hospital, plaintiff underwent a CT scan of the cervical spine. The films were read and interpreted by Gordon Cross, M.D., a radiologist. The complaint alleged that Dr. Cross was an apparent agent of the hospital. Plaintiff alleged that the hospital, through its employees and agents, breached the duty owed to plaintiff in the following ways:

"a. Failed to properly interpret a CT of the cervical spine performed January 12, 2001;

b. Failed to appreciate cervical frac- tures revealed on a CT of the cervical spine performed January 12, 2001; and

c. Misread and misinterpreted a cervical

spine CT performed January 12, 2001."

The majority in this case ignores the supreme court's directive that section 2-616(b) be liberally construed in favor of hearing a plaintiff's claim. See <u>Bryson</u>, 174 Ill. 2d at 106, 672 N.E.2d at 1223 (section 2-626(b) should be liberally construed). In fact, "[m]edical malpractice plaintiffs, in particular, are afforded every reasonable opportunity to establish a case, and to this end, amendments to pleadings are liberally allowed to enable the action to be heard on the merits rather than brought to an end because of procedural technicalities." <u>Avakian</u>, 328 Ill. App. 3d at 154, 766 N.E.2d at 290, citing <u>Peterson v. Hinsdale Hospital</u>, 233 Ill. App. 3d 327, 332, 599 N.E.2d 84, 89 (1992).

Here, the hospital argues that because the timely filed complaint did not allege any error regarding the reading of the CT scan, the claim cannot relate back. But if the timely filed complaint had contained such an allegation, no need to relate back would have arisen because the claim would have been made.

The hospital knew when the first amended complaint was filed that plaintiff alleged the hospital, through its employees or agents, breached its duty of care to plaintiff during the initial 36 hours of his hospital stay. As plaintiff pointed out to the trial court at a hearing on the motion, the allegations in all the complaints relate to only the first 36 hours of plain-

tiff's treatment at the hospital (the time prior to the surgery). The amendment clearly relates back as it grew out of the same transaction or occurrence, the negligent care of plaintiff's injury in the first 36 hours of hospitalization. A reading of the statute that each individual act of medical care--e.g., reading X-rays, taking temperatures, performing neurological checks--constitutes a separate transaction or occurrence is entirely too narrow an interpretation of the relation-back doctrine.

In light of Grove, the trial court's reversal of its prior grant of leave to amend is understandable. However, given the plurality opinion in Grove, I question its precedential value. See, e.g., Ferguson v. McKenzie, 202 Ill. 2d 304, 315 n.1, 780 N.E.2d 660, 667 n.1 (2001) (McMorrow, J., dissenting) (noting that "'plurality decisions of a state supreme court, in which no majority agrees to the reasoning, are not binding under the doctrine of stare decisis'"), quoting 5 Am. Jur. 2d Appellate Review §602, at 298 (1995). And while I disagree with Grove, it is nonetheless factually distinguishable. In Grove, two separate surgical procedures were at issue. Grove, 364 Ill. App. 3d at 414, 846 N.E.2d at 155. The timely filed complaint only drew the defendant's attention to one of those surgeries. In this case, the different "procedures"--CT scan versus neurological checks, spinal assessments, extremity strength, and diminishing neurolog-

ical status--cannot be so easily distinguished.  All relate to the diagnosis of plaintiff's condition.  The "transaction" or "occurrence" at issue in this case is the 36 hours of care preceding the MRI and surgery.

I agree with Justice Cook's dissent in Grove, noting his disagreement with the statements in McCorry and Bailey that the original complaint must provide the defendant "'with all of the information necessary for preparation of the defense for the claim asserted later.'" (Emphasis in original.)  Grove, 364 Ill. App. 3d at 430, 846 N.E.2d at 168 (Cook, J., dissenting), quoting McCorry v. Gooneratne, 332 Ill. App. 3d 935, 944, 775 N.E.2d 591, 599 (2002).

> "[T]hose statements take a view of pleadings that has now been discarded. 'Today the function of informing an opponent of one's position is largely accomplished through discovery, a function that was largely fulfilled by the pleadings at an earlier time.'  3 R. Michael, Illinois Practice §23.1, at 300 (1989) (Civil Procedure Before Trial); Wolf v. Meister-Neiberg, Inc., 143 Ill. 2d 44, 46-48, 570 N.E.2d 327, 328-29 (1991) (defendants provided with notice of correct location of occurrence before expiration of statute of

limitations through depositions and production requests).  <u>McCorry</u> concedes that discovery may satisfy the notice requirement but adds a further requirement, that 'the defendant must have notice not only of the operative facts, but also of the plaintiff's intention to assert a claim on the basis of those facts.'  <u>McCorry</u>, 332 Ill. App. 3d at 946, 775 N.E.2d at 601.  There is no support in the statute or the decisions of the supreme court for that additional requirement.  A litigant investigating a case does not limit his investigation to his opponent's allegations but attempts to learn everything he can about the incident.  We should not encourage litigants to close their eyes to facts that are readily apparent."  <u>Grove</u>, 364 Ill. App. 3d at 430-31, 846 N.E.2d at 168 (Cook, J., dissenting).

Moreover, defendants in this case were on notice within the statute of limitations that the 36 hours of medical care, including the CT scan, might be an issue.  At the very least, the hospital knew from Dr. Long's deposition testimony (September 9, 2002) and the medical certificate attached to the first amended

- 32 -

complaint that the CT scan revealed a bony density at C5, raising the possibility of an avulsion fracture. Further, Dr. Long, in her deposition, admitted the normal readings of the CT scan were not compatible with plaintiff's neurological deficits.

The trial court imposed not only this notice requirement but also a presumption-of-prejudice prong to the relation-back doctrine. The trial court's January 11, 2005, docket entry concluding that the claims did not relate back found the hospital had been "prejudiced by not being able to preserve evidence concerning these new allegations." Contrary to the court's finding, nothing in the record reflects any prejudice to the hospital's preparation of its defense. The court cannot presume prejudice without evidence of prejudice. The record contains no indication that the hospital was unable to preserve the evidence relating to the CT scan.

In fact, the record reflects the hospital did maintain the evidence. Exhibits attached to Dr. Dold's November 2004 witness disclosure include correspondence between Dr. Dold's counsel, Sarah Moskowitz, and retained witness, Gregory J. Przybylski, M.D. Beginning in October 2003, Moskowitz sought the CT scans from counsel for the hospital, apparently at Dr. Przybylski's request. Apparently, Moskowitz finally received them from counsel for the hospital in May 2004.

This evidence demonstrates the CT scans were maintained

by the hospital and the hospital was not prejudiced by an inability to preserve the evidence relating thereto. Such evidence also supports the conclusion that the CT scans were part of the same transaction or occurrence. Clearly, Dr. Przybylski needed those documents even prior to the allegations being made against Dr. Dold relating to the CT scans (plaintiff did not seek to file the second amended complaint until June 2004). In this case, when the hospital was put on notice in January 2003 that its employees and agents may have failed to diagnose and treat plaintiff's diminishing neurological function, the hospital would have been under a duty to preserve all the evidence relating to that care. In this case, that was the 36-hour period before plaintiff was diagnosed and had surgery. Denying plaintiff leave to amend under these circumstances constitutes not only a mistake of law but an abuse of discretion.

For these reasons, I would reverse the trial court.